STATE ex rel. ST. LOUIS–SAN FRAN-
CISCO RAILWAY CO., Appellant,

v.

PUBLIC SERVICE COMMISSION of
Missouri et al., Respondents.

No. 24940.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1969.

Rehearing Denied April 7, 1969.

Ernest D. Grinnell, Jr. and W. Bruce Kopper, St. Louis, for appellant.

Hendren & Andrae by John H. Hendren, Jefferson City, for respondent Missouri Pac. Truck Lines, Inc.

HOWARD, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Cole County, Missouri, affirming an order of the Missouri Public Service Commission granting a Certificate of Public Convenience and Necessity to Missouri Pacific Truck Lines, Inc., hereinafter called Mo Pac, (formerly Missouri Pacific Freight Transport Company), a wholly owned subsidiary of the Missouri Pacific Railroad Company. The certificate granted by the Commission (as amended on motion for rehearing) is as follows:

" * * * to operate as a common carrier by motor vehicle as follows:

COMMON CARRIER, INTRASTATE, SPECIALIZED IRREGULAR ROUTE AUTHORITY:

Between all points and places in Washington, Crawford, St. Francois, Madison, Bollinger, Iron, Reynolds, Shannon, Dent, Phelps, Wayne, Carter, Butler, Howell and Oregon Counties, Missouri, in the specialized transportation of commodities, the transportation of which because of size or weight requires the use of special equipment, and related machinery parts and related materials and supplies when their transportation is incidental to and in conjunction with the transportation of commodities, the transportation of which because of size or weight requires the use of special equipment, when such commodities are used in prospecting, development, construction, maintenance and operations of mines, mills and smelters; also in the transportation of ores, concentrates and by-products thereof between all points and places in the above named counties.

RESTRICTION: No authority is granted in the transportation of commodities, the transportation of which because of size or weight requires the use of special equipment, between any point outside the above mentioned counties and points served by the St. Louis-San Francisco Railway Company located in the above mentioned counties either in single-line service or in joint-line service with other truck or rail carriers.

Such service to be authorized irrespective of the location of such points on the route of a regular route common carrier or between points on the route of two or more regular route common carriers where through or joint service has been authorized or established between such regular route common carriers."

It is to be noted that this authority consists of two distinct types of transportation, one is the specialized transportation of commodities, the transportation of which because of size or weight requires the use of specialized equipment (together with related machinery parts and material and supplies transported incidentally to the main item to be transported) which is commonly referred to as "heavy hauler" authority. The other is the transportation of "ores, concentrates and by-products thereof." This is an irregular route authority to, from and between all points in the fifteen counties named in the authority. The heavy hauler authority is limited to the transportation of commodities used in prospecting, development, construction, maintenance and operations of mines, mills and smelters within the area. Thus, we are dealing with a very limited authority.

The application for this authority was protested by the St. Louis-San Francisco

Railway Company (hereinafter called Frisco) and by Dodds Truck Line, Inc., Main Line Hauling Co., Inc., Basin Truck Lines, Inc., Adams Trucking Company, J. J. Tune (a truck line), Truck Transport, Inc., and by some authorized heavy haulers who withdrew their protest before the hearing on the application was held. It appears that there were some 80-odd individuals who held dump truck authority in the area. None of these protested and none of them took advantage of the special provision in the Public Service Commission Report and Order allowing them to reopen the record before the effective date of the order. Of the protestants above enumerated only the Frisco, Dodds Truck Lines and J. J. Tune presented evidence, consisting of one witness for each such protestant. The other protestants participated in the hearing by attorney but did not produce any evidence. The evidence shows that in this 15-county area, there are large deposits of minerals and that there is presently considerable activity in prospecting for, locating and constructing mines, mills and smelters and related enterprises. There is some rail service in each of these 15 counties with the exception of Reynolds County which lies in the center. The protestant Frisco was, before and at the time of the hearing, constructing a new 30-mile rail line to Viburnum, Bixby and Buick in the northwestern part of Iron County, Missouri. The Frisco is the only protestant that has appealed from the order of the Commission.

At the time of the hearing, the evidence showed that there was being constructed or had recently been completed the mine, mill and smelter complexes at Viburnum, Bixby and Buick in Iron County, and mines and mills at Fletcher and Ellington in Reynolds County. A smelter was being constructed at Glover and what was referred to as the new Hanna mine at Pilot Knob, both in Iron County. Mention was also made of the Higdon mine and mill. This was referred to as being in the northwest corner of Bollinger County or the northeast corner of Madison County. However, later testimony indicated that at least a part, and perhaps all, of this installation was in Perry County which is outside the area covered by the certificate in question. In addition, a large mine at Pea Ridge in the northern part of Washington County had recently come into being. This last mine is served by a railroad spur of the Missouri Pacific Railroad Company. The evidence showed that there was additional prospecting going on generally in this area and there were various mineral deposits throughout the area. The testimony as to prospecting was of a very general nature because it appears that this information is highly confidential and that all of those involved desire to keep their activities secret from their competitors.

In its application Mo Pac sought authority to transport any and all commodities used in prospecting for minerals and the development, construction, maintenance and operation of mines, mills and smelters and all buildings and furnishings therein and appurtenances thereto, whether or not such transportation required specialized equipment. In addition, it sought authority to transport ores, concentrates and all by-products and finished products thereof. As heretofore pointed out, the authority granted is limited to heavy hauling and to ores, concentrates and by-products. The evidence adduced by Mo Pac concentrated on its ability to provide special equipment needed in connection with the heavy hauler authority actually granted and the hauling of concentrates from mill to smelter by large specialized dump tractor-trailer units. There was evidence from many construction contractors and suppliers of heavy equipment that they had need for heavy hauler transportation to transport the equipment used in clearing and preparing mine and mill sites, in drilling mine shafts and in equipping and operating the mines and in the day-to-day operation of the mills. There was also specific evidence as to the need for round-the-clock transportation of the ore concentrates from the

mills to the smelters. The smelter being constructed at Glover will be a custom smelter. That is, it will undertake to smelt the ores and concentrates produced by others on a contract basis subject to the capacity of the smelter and will hold itself out to process ores and concentrates for any member of the mining industry with whom it can reach satisfactory arrangements. The company building this smelter was engaged in prospecting for ore in Reynolds County with the definite expectation of establishing a mine, the product of which would be smelted at the Glover site.

As heretofore pointed out, Frisco is the only protestant who has appealed. It has railroad lines in the four southwestern counties in this area, one line runs from the center of Carter County (approximately at Van Buren) through the southern part of Shannon County, into Howell County where it joins with a line from the Arkansas border up through Oregon and Howell Counties and going on to West Plains. The evidence is that there were mining installations and ore movements in the area and that the miners trucked the ore and concentrates to the rail line where they were stored and transported in carload lots as they accumulated. The various mining installations in this area were not pinpointed. Frisco also has a rail line running in a general northeast-southwest direction through Crawford and Phelps Counties. From this, a line goes south to Salem in Dent County. From this rail line south to Salem, the new lead branch line is being constructed to serve the aforementioned areas in northwestern Iron County. It appears from appellant Frisco's brief that it is the business expected to be done by this lead branch line that is the prime concern of appellant.

To protect the Frisco's investment and interest in this lead branch line and its other lines in the area, the Public Service Commission specifically provided a restriction on Mo Pac's authority prohibiting its transportation under the heavy hauler authority between any point outside this 15-county area and points served by the Frisco in such area, either in single-line service or joint-line service with other carriers. Thus, the appellant Frisco is effectively protected from competition by Mo Pac under its heavy hauler authority. A reading of its brief reveals that its prime complaint is that it was not likewise protected in the hauling of ores and concentrates.

The evidence showed that in many instances (perhaps most) the mines and mills were located some distance from the rail line so that their product had to be trucked (or otherwise transported) from the mine and mill to the rail line. It was specifically brought out that the Frisco was not and did not propose to give any service beyond the limits of its rail lines themselves. Thus, it was up to the persons interested to provide for transportation from the rail line to the mine and mill site and from the mine and mill to the rail line.

On this appeal we are not authorized to weigh the evidence heard by the Commission. The findings of the Commission are prima facia correct and appellant carries the burden of making a convincing showing that they are not reasonable and lawful. We can only disturb the order of the Commission if we find that its conclusions are unreasonable or unlawful or that they are not supported by competent and substantial evidence upon the whole record or if we find the Commission's conclusions are against the overwhelming weight of the evidence. State ex rel. Chicago, Rock Island & Pacific Railroad Company v. Public Service Commission, Mo., 312 S.W.2d 791. Appellant strongly contends that Mo Pac did not carry its burden of proof before the Commission. It is true that in the proceeding before the Commission the applicant Mo Pac had the burden of proving the existence of public convenience and necessity for the granting of a certificate. However, on this appeal, the burden is not on applicant but is on the appellant Frisco to demonstrate that the conclusion of the Commis-

sion is not supported by competent and substantial evidence upon the whole record.

The parties are not really in conflict as to the applicable law; they only differ as to the application of these legal principles to the evidence before the Commission. Appellant refers to such cases as State ex rel. Missouri Pacific Freight Transport Company v. Public Service Commission, Mo., 295 S.W.2d 128; State ex rel. Potashnick Truck Service v. Public Service Commission, Mo.App., 129 S.W.2d 69; State ex rel. Missouri, Kansas & Oklahoma Coach Lines, Inc. v. Public Service Commission, 238 Mo. App. 317, 179 S.W.2d 132; State ex rel. Byers Transportation Co., Inc. v. Public Service Commission, Mo.App., 246 S.W.2d 825; and State ex rel. Orscheln Bros. Truck Lines, Inc. v. Public Service Commission, Mo.App., 433 S.W.2d 596, as supporting its contention that an applicant for a certificate for public convenience and necessity must show that the public convenience will be served by the proposed service and that existing service will not be seriously injured thereby. The appellant contends that Mo Pac did not make such a showing and that, therefore, the granting of the certificate to Mo Pac was unauthorized. It further contends that the evidence shows that its existing service would be hurt by the granting of the certificate here in question. Frisco does not question Mo Pac's qualification to receive the certificate on proper proof. Conversely, Mo Pac contends that the evidence shows a public need for the transportation authorized by the certificate in question over and above the existing transportation facilities.

In this connection, it is significant to note that at least two heavy haulers with authority to serve this 15-county area withdrew their protest before the hearing before the Commission. None of the general commodity carriers in the area who protested have appealed the decision of the Commission. None of the many dump truck operators protested and none have since come in as they were specifically authorized to do. The Commission specifically stated that it had given careful consideration to existing transportation facilities and the aforesaid actions of the other truck operators in the area lend substance to this recital.

■ The cases heretofore listed as relied on by appellant primarily concerned regular route general commodity authority. Such authority is very different from the irregular-route specialized authority here being considered. These cases generally hold that before the issuance of a certificate for a new transportation service is authorized, the applicant must show a need for such service over all of the routes to be served. However, these cases also point out that this requirement does not mean that there must be specific evidence as to need for service to each and every point to be served on the proposed route. In the case at bar, we are not dealing with general commodity or regular route service; we are dealing with irregular route service which has often been granted by the Commission on an area basis rather than on the basis of an enumeration of the points to be served. Further, we must remember that Mo Pac is not authorized to serve all potential customers within the area under this heavy hauler authority. It is limited to transporting only those commodities used in connection with prospecting, development, construction, maintenance and operation of mines, mills and smelters. Likewise, from the very nature of the authority to haul ores, concentrates and by-products thereof, such hauling will be from the sites of mines and mills or storage areas. The law does not require that a specialized irregular route authority enumerate all of the points to be served.

■ Appellant cites the case of State ex rel. DeWeese v. Morris, 359 Mo. 194, 221 S.W.2d 206, as supporting its contention that the Commission could not properly consider Exhibit No. 8 in arriving at its conclusion to grant authority in this entire 15-county area. Exhibit No. 8 was a map of the State of Missouri showing the location

of all of the known mineral deposits. It was prepared by the State Division of Geological Survey and Water Resources. When it was offered into evidence, all of the protestants specifically stated that there was no objection to it being received. Appellant now states that because there was no testimony of any witness as to what was shown by the map that it amounts only to hearsay. Appellant relies upon the DeWeese case, supra, as holding that hearsay evidence does not constitute substantial evidence to support an administrative decision. The DeWeese case was an attempt to collect additional sales tax (plus penalty) over and above that shown to be due by the taxpayer's return. The only evidence as to the fact that additional tax was due was the testimony of one agent of the Department of Revenue. It was brought out that his testimony was not based on personal knowledge but solely and entirely on statements made to him by other individuals, some of whom were not even named, and there was no evidence as to the reliability of such informants. Under this state of facts, the Supreme Court held that there was no substantial evidence to support the administrative findings of additional taxes due. The principles of this decision have no applicability to the case at bar where the map in question was an official publication of the State of Missouri; was only one bit of evidence before the Commission and where the document was admitted into evidence without objection. The map speaks for itself and does not need to be explained. We do not need to decide whether or not Exhibit No. 8 constitutes hearsay under the circumstances here presented because it has repeatedly been held that hearsay evidence which is properly admitted constitutes evidence which may be considered along with other evidence in the case.

■ It is apparent from the Report and Order of the Commission that the Commission considered that Mo Pac had carried its burden of showing that public convenience would be served and that there was necessity for the authority granted. From a careful review of all of the evidence, both oral and documentary, as heretofore outlined, we cannot say that the action of the Commission was arbitrary or illegal or that it was not supported by substantial evidence upon the whole record. We therefore affirm the judgment of the trial court affirming the action of the Commission.

CROSS, J., and MORGAN, Special Judge, concur.

SHANGLER, J., not participating because not a member of the court when the cause was submitted.