STATE of Missouri ex rel. MOBILE HOME ESTATES, INC., Appellant,

v.

PUBLIC SERVICE COMMISSION OF MISSOURI, Respondent.

No. WD 50805.

Missouri Court of Appeals, Western District.

Jan. 30, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

Application to Transfer Denied May 28, 1996.

.James F. Ralls, Jr., Feldhausen & Ralls, P.C., Kansas City, for appellant.

David L. Woodsmall, Assistant General Counsel, Mo. Public Service Com'n, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Mobile Home Estates, Inc. (MHE), a manufacturer of mobile homes, appeals the Public Service Commission's (PSC) suspension of its certificate of registration to do business in the state of Missouri for a period of one year. MHE asserts that the PSC's suspension was not authorized by Missouri law and that the length of the suspension constituted an abuse of discretion on the part of the PSC. We find that the PSC did not have authority to suspend MHE's license for the violation at issue, and reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

MHE constructed the home in question in this case in October, 1991 at MHE's factory in Bryan, Ohio. Following construction, the home was placed on MHE's display lot in Ohio. Approximately four months later, the home was sold to American Homes in Murphysboro, Illinois. While en route to the dealership in Illinois, the home suffered massive frame damage. It was rejected by the dealership in Illinois and was returned to the factory in Bryan for repairs.

In an attempt to correct the damaged frame under the home, MHE lifted the home off the frame and placed it on a new frame. In so doing, however, a portion of the home's electrical system was damaged. Because an MHE employee falsely certified that he had retested the manufactured home's electrical system in accordance with federal regulations, whereas he had not in fact retested that system, the damage was not discovered. MHE management also stated that it was unaware the employee had failed to retest the electrical system and terminated the employee after learning of the failure.

Following the frame repair, the home was sold to DeHart Mobile Home Sales in Hollister, Missouri. The latter eventually resold the home to the Senf family in July, 1992. Five days after the Senfs bought the home, they contacted the Division of Manufactured Homes, Recreational Vehicles and Modular Units (Division of Manufactured Homes) of the PSC regarding electrical problems they were experiencing with the home, the most threatening of which was the supply of 220 volt electricity to several of the 110 volt outlets in the home. Inspections by the Division of Manufactured Homes also revealed structural and plumbing problems with the Senfs' manufactured home.

MHE made some attempts to repair the home and address the problems raised by the Senfs, but these attempts failed.

The Division of Manufactured Homes filed a complaint with the PSC in August, 1992 seeking suspension of MHE's registration in Missouri. At some point after the filing of the complaint and prior to a factual hearing held before the PSC in April, 1994, MHE resolved the Senfs' claim by repayment of their entire purchase price and an additional payment to the Senfs for other incidental damages which the Senfs indicated they had suffered.

In September, 1994, the PSC found that MHE had violated Section 700.015.1.[1] That section states that "[n]o person shall rent, lease, sell or offer for sale any manufactured home ... unless such manufactured home ... complies with the code." Under Section

---

1. All statutory references are to RSMo 1986 un- less otherwise noted.

700.115.2, this violation makes the violator "liable to the state of Missouri for a civil penalty in an amount which shall not exceed one thousand dollars for each such violation." Moreover, Section 700.045(5) states that it is a misdemeanor:

> To fail to correct a code violation in a manufactured home ... owned, manufactured or sold within a reasonable time not to exceed ninety days after being ordered to do so in writing by an authorized representative of the commission ... [.]

The PSC did not fine MHE pursuant to Section 700.115.2, nor did it find that MHE failed to correct the code violations within a reasonable time after being ordered to do so in writing in violation of Section 700.045(5). Instead, relying on Section 700.100.3(4), it suspended MHE's certificate of registration for a period of one year from the effective date of the PSC's Report and Order. This had the effect of denying MHE the right to sell homes in Missouri for one year because, pursuant to Section 700.090, a manufacturer must be registered with the PSC in order to sell mobile homes in this state.

Section 700.100.3 sets out the parameters of the PSC's authority to suspend or revoke a mobile home manufacturer's registration as follows:

> The following specifications shall constitute grounds for the suspension, revocation or placing on probation of a manufacturer's or dealer's registration:

> (1) If required, failure to comply with the provisions of section 301.250, RSMo, or section 301.280, RSMo;

> (2) **Failing to be in compliance with the provisions of section 700.090;**

> (3) If a corporation, failing to file all franchise or sales tax forms required by Missouri law;

> (4) **Engaging in any conduct which constitutes a violation of the provisions of section 407.020, RSMo;**

> (5) Failing to comply with the provisions of section 2301–2312 of Title 15 of the United States Code (Magnuson–Moss Warranty Act);

> . . . .

> (9) **Engaging in conduct in violation of section 700.045;**

> (10) Failing to comply with the provisions of section 301.210, RSMo.

§ 700.100.3 (emphasis added).

The only provision of Section 700.100.3 which the PSC alleges MHE violated is subsection (4), "[e]ngaging in any conduct which constitutes a violation of the provisions of section 407.020." Section 407.020 is not a part of the Manufactured Homes Standards, which are set out solely in Sections 700.010 through 700.115. Rather, it is one of the provisions relating to Merchandising Practices.

The PSC does not assert that MHE violated any of the terms of Section 407.020 itself.[2] Rather, the PSC argues that the compass of

---

2. Section 407.020 states:

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, ... in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, ... in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

. . . .

3. Any person who willfully and knowingly engages in any act, use, employment or practice declared to be unlawful by this section with the intent to defraud shall be guilty of a class D felony.

4. It shall be the duty of each prosecuting attorney and circuit attorney in their respective jurisdictions to commence any criminal actions under this section, and the attorney general shall have concurrent original jurisdiction to commence such criminal actions throughout the state where such violations have occurred.
§ 407.020.

Section 407.020 is extended by Section 700.115.1, which states:

> Except as otherwise provided in subsections 2 and 3 of this section, *a violation of the provisions of sections 700.010 to 700.115 shall constitute a violation of the provisions of section 407.020, RSMo.* In addition to the authority vested in the *attorney general* to enforce the provisions of that section, *he may petition the court* and the court may enter an order revoking the registration certificate of the defendant or defendants issued pursuant to the provisions of section 700.090.

§ 700.115.1 (emphasis added).

As is evident, Section 700.115.1 states that every violation of any provision of Sections 700.010 to 700.115 shall also be considered a violation of Section 407.020. It explicitly gives the Attorney General of Missouri the authority to prosecute such violations and, in addition, explicitly gives the Attorney General the discretion to ask the circuit court to revoke the violator's mobile home sales registration certificate. Such certificates are issued pursuant to Section 700.090.

The issue before us is whether Section 700.115.1, when read in conjunction with Section 700.100.3, also gives the PSC the authority to suspend or revoke a manufacturer's license for any violation of any of the Manufactured Home Standards as set out in Sections 700.010 to 700.115.

## II. *STANDARD OF REVIEW*

Although this matter is appealed from the circuit court, we review the findings and decisions of the agency, not the judgment of the circuit court. *Branson R–IV Sch. Dist. v. Labor & Indus. Relations Comm'n*, 888 S.W.2d 717, 720 (Mo.App.1994). The PSC's order has a presumption of validity and the burden is on those attacking it to prove its invalidity. *State ex rel. Dyer v. Public Service Comm'n*, 341 S.W.2d 795, 800 (Mo.1960), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961).

In reviewing a decision of the PSC we analyze two issues. First, we must determine whether the PSC's order is lawful. *State ex rel. Utility Consumers Council, Inc. v. Public Service Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979); Mo. Const. Art. V, § 18. An order's lawfulness turns on whether the PSC had the statutory authority to act as it did. *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 217 (Mo.App.1973). When determining whether the PSC's order is lawful, the appellate courts exercise unrestricted, independent judgment and must correct erroneous interpretations of the law. *Burlington N. R.R. v. Director of Revenue*, 785 S.W.2d 272, 273 (Mo. banc 1990); *Branson R–IV Sch. Dist.*, 888 S.W.2d at 720.

If we find that the order is lawful, we must then determine whether it is reasonable. *State ex rel. Utility Consumers Council, Inc. v. Public Service Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979). In so doing, this Court determines whether the order was supported by substantial and competent evidence on the whole record, whether the decision was arbitrary, capricious, or unreasonable, or whether the PSC abused its discretion. *State ex rel. Chicago, Rock Island & Pac. R.R. Co. v. Public Service Comm'n*, 312 S.W.2d 791, 794 (Mo. banc 1958); § 536.140.2. "Substantial evidence" means evidence which, if true, would have a probative force upon the issues, and necessarily implies and comprehends competent, not incompetent, evidence. *State ex rel. Rice v. Public Service Comm'n*, 359 Mo. 109, 220 S.W.2d 61 (1949).

In reviewing the reasonableness of an order of the PSC, the Court considers the evidence in the light most favorable to the agency together with all reasonable supporting inferences. If the evidence permits either of two opposite findings, this Court must defer to the findings of the PSC. *Fleming Foods of Missouri, Inc. v. Runyan*, 634 S.W.2d 183, 192 (Mo. banc 1982). Only when a PSC order is clearly contrary to the overwhelming weight of the evidence may a court set it aside. *State ex rel. St. Louis San Francisco Ry. Co. v. Public Service Comm'n*, 439 S.W.2d 556, 559 (Mo.App.1969).

Finally, where a decision involves the exercise of PSC regulatory discretion, Missouri courts have long recognized that the Public Service Commission Law dele-

gates a large area of discretion to the PSC and "many of its decisions necessarily rest largely in the exercise of a sound judgment." *State ex rel. Dyer v. Public Service Comm'n*, 341 S.W.2d 795, 802 (Mo.1960), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961). Under these circumstances, the reviewing court will not substitute its judgment for that of the PSC on issues within the realm of the agency's expertise. *State ex rel. Missouri Public Service Comm'n v. Pierce*, 604 S.W.2d 623, 625 (Mo.App.1980).

### III. THE PSC'S ORDER WAS UNLAWFUL IN THAT IT LACKED AUTHORITY TO SUSPEND MHE'S LICENSE FOR VIOLATION OF SECTION 700.015.1

#### A. The Contentions of the Parties.

The following discussion is somewhat technically complex because it requires simultaneous consideration of cross-references and inferences drawn from a number of statutes. Reference to the provisions of Section 700.100.3, which was quoted in the Factual Statement above and which is again set out in footnote 3 below, may be helpful in understanding the discussion.[3]

MHE contends that the PSC's suspension order was unlawful because the PSC had no authority under Section 700.100.3(4) to suspend its license for one year simply because it had violated Section 700.015.1 by selling a manufactured home which was not in compliance with code requirements.

The PSC argues that, to the contrary, Section 700.115 gives it, and not just the Attorney General, the authority to revoke or suspend a mobile home manufacturer's license for violation of *any* provision of Sections 700.010 to 700.115. The PSC recognizes that Section 700.115.1 does not explicitly so state, nor does it even mention the PSC. However, the PSC points to the fact that Section 700.100.3 permits the PSC to suspend a manufacturer's license for violation of Section 407.020. Because Section 700.115 also states that *any* violation of Sections 700.010 to 700.115 is a violation of Section 407.020, it follows, the PSC says, that the PSC can suspend a manufacturer's license for *any* violation of the Manufactured Homes Standards set out in Sections 700.010 to 700.115.

While the PSC's argument has surface appeal, MHE argues that its adoption would ignore the fact that Section 700.100.3 explicitly lists violations of only two sections of Chapter 700—Section 700.045 and Section 700.090—as providing a basis for suspension of a manufacturer's license. MHE is not accused of violating either Section 700.090, which requires that manufacturers and dealers of manufactured homes register with the PSC, or Section 700.045, which sets out certain acts which constitute misdemeanors. MHE argues that by listing only those two provisions as a basis for a suspension order by the PSC, the statute excludes violation of other sections of Chapter 700 as a basis for suspension.

#### B. The Applicable Statutes Must Be Read Together.

 In determining whether the PSC's or MHE's interpretation of the interrelationship of the many relevant statutory provisions is correct, we are necessarily guided by the principle that all provisions of a legislative act must be construed together and the

---

**3.** As noted earlier, Section 700.100.3 states in relevant part:

The following specifications shall constitute grounds for the suspension, revocation or placing on probation of a manufacturer's or dealer's registration:

(1) If required, failure to comply with the provisions of section 301.250, RSMo, or section 301.280, RSMo;

(2) **Failing to be in compliance with the provisions of section 700.090;**

(3) If a corporation, failing to file all franchise or sales tax forms required by Missouri law;

(4) **Engaging in any conduct which constitutes a violation of the provisions of section 407.020, RSMo;**

(5) Failing to comply with the provisions of section 2301–2312 of Title 15 of the United States Code (Magnuson–Moss Warranty Act);

. . . .

(9) **Engaging in conduct in violation of section 700.045;**

(10) Failing to comply with the provisions of section 301.210, RSMo.

§ 700.100.3 (emphasis added).

provisions must be harmonized, if possible, and every clause given some meaning. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). Thus, we must interpret this portion of Chapter 700, if possible, in such a way as to give meaning to each provision.

 In so doing, we find that the PSC acted beyond its authority in suspending MHE's license. As MHE argues, by specifying violation of only two sections in Section 700.100.3 as grounds for suspending or revoking a certificate, the legislature is presumed not to have intended that violations of other sections of Chapter 700 form the basis for suspending or revoking a manufacturer's license. *See Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 146 (Mo. banc 1980); *Board of Registration for Healing Arts v. Levine*, 808 S.W.2d 440 (Mo.App.1991). The PSC's construction of Section 700.115.1 to also allow the PSC to suspend or revoke registration for violation of all other provisions of Sections 700.010 through 700.115 ignores this presumption.

 The PSC's construction would also make Section 700.100.3's specification of violations of Sections 700.090 and 700.045 as grounds for suspending or revoking a registration meaningless, as that specification would simply be a partial duplication of the implication in subsection (4) that all violations of Sections 700.010 to 700.115 provide a basis for suspension or revocation because they are violations of Section 407.020. The legislature is presumed not to have enacted meaningless provisions. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992); *Stiffelman v. Abrams*, 655 S.W.2d 522, 531–32 (Mo. banc 1983).

Our conclusion is buttressed by the fact that the statute gives the PSC a variety of other ways to punish violations of Chapter 700, generally, and violation of Section 700.015(1), such as is alleged here, in particular. As noted previously, Section 700.115.2 provides that "whosoever violates any provision of this chapter shall be liable to the state of Missouri for a civil penalty in an amount which shall not exceed one thousand dollars for each such violation." As also noted, Sec-

tion 700.045(5) states that it shall be a misdemeanor:

> To fail to correct a code violation in a manufactured home ... owned, manufactured or sold within a reasonable time not to exceed ninety days after being ordered to do so in writing by an authorized representative of the commission ... [.]

§ 700.045(5).

As just discussed, a violation of Section 700.045(5) is *itself* one of the two bases for suspension for violation of a provision of Chapter 700 specifically set out in Section 700.100.3. Thus, if the PSC wanted to suspend MHE's license because of its failure to correct the code violations, it could have ordered in writing that MHE correct the violations. If MHE failed to do so within a reasonable time, not to exceed 90 days, MHE would have been guilty of a misdemeanor, under Section 700.045(5), and this would have permitted the PSC to suspend its registration under Section 700.100.3(9).

MHE apparently corrected the violations before the PSC issued a written order or before a reasonable time had passed after such an order. Thus, so far as the record shows, MHE did not violate Section 700.045(5). The PSC's interpretation of the statute would mean it nonetheless has the power to suspend MHE's registration. This would flout the requirement just noted that it is only if MHE failed to correct the violations within a reasonable time after notice that this failure can be used as a basis for suspension.

By contrast, acceptance of MHE's interpretation of the statutes gives meaning to all provisions of Section 700.100.3 and indeed to Chapter 700 *en toto*. Section 700.100.3 is interpreted as it is written; it only allows the PSC to suspend a license for violation of two sections of Chapter 700: Section 700.090 and Section 700.045. While Section 700.115.1 gives a broad grant of authority to revoke a manufacturer's license for *any* violation of Sections 700.010 to 700.115, the authority to seek such a suspension is given to the Attorney General and it is to be sought in circuit court, not before the PSC.

This interpretation of the relevant provisions is supported by the legislative history

of what is now codified as Section 700.115.1. An earlier, unenacted version of that section provided that:

*Any violation of any provision of this act shall constitute a violation of section 407.020, RSMo, subjecting the offender to an injunction suit* pursuant to section 407.100, RSMo, *by the attorney general* or the prosecuting attorney of the county in which the violation occurred. In any proceeding brought by the attorney general or prosecuting attorney for a violation of that section, the court *may grant,* in addition to the remedies provided for in an action brought for violation of that section, *revocation of the registration certificate* of the defendant or defendants in such action. Any person violating the terms of an injunction obtained hereunder shall be subject to the penalties provided in section 407.110, RSMo, and may be prosecuted for contempt.

H.B. No. 1393, 78th Leg., 2d Sess. (1976) (emphasis added).

The unenacted version of this provision can solely be interpreted to give only the Attorney General the right to seek suspension of a manufacturer's license for violation of *any* provision of what is now Chapter 700. The PSC suggests that the fact that the text of this section was modified and condensed prior to passage indicates an intent not to limit its scope to the Attorney General.

We see no indication, however, that by its modifications the legislature intended to enlarge the scope of those permitted to seek such suspension for violation of Section 407.020 to include the PSC. Indeed, the contrary is true: the provision as previously written permitted either the Attorney General or local prosecutors to bring suit; as enacted it gives only the Attorney General that authority, and it further deletes any reference to the Attorney General's authority to seek an injunction. The primary purpose of the provision has not been changed, however, just narrowed. In both versions, Section 700.115.1 gives the Attorney General the power to charge a violator of Sections 700.010 to 700.115 with a merchandising practices violation and to use this as a basis to seek revocation of the violator's certificate,

in addition to the other penalties permitted to be sought under Section 407.020. Section 700.115.1 does not suggest that the PSC is to have such authority and we find that it does not.

Because of our determination that the PSC's suspension of MHE's license for one year was unlawful, we need not reach the issue whether the PSC's decision that the suspension be for a one year period was reasonable. For the reasons stated above, we reverse the order of the PSC suspending MHE's license for one year and remand for further consideration of what sanctions should be imposed for MHE's violation of Section 700.015.1.

All concur.