In re MARRIAGE OF QUINTARD.

**Jerry Lee QUINTARD,
Respondent-Appellant,**

v.

**Donna Marie QUINTARD,
Appellant-Respondent.**

Nos. 14804, 14810.

Missouri Court of Appeals,
Southern District,
Division Two.

July 9, 1987.

Motion for Rehearing or Transfer
Denied July 30, 1987.

Application to Transfer Denied
Sept. 15, 1987.

James R. Spradling, Carthage, for respondent-appellant.

Ron Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for appellant-respondent.

HOGAN, Judge.

This is a second appeal in a proceeding to modify the maintenance provision of a decree of dissolution of marriage. Two questions were presented on the first appeal, which came to us upon sustention of a motion for summary judgment. One of those questions was whether, on motion to modify the terms of the original decree, the trial court could consider a division of Jerry's military retirement benefits in light of the enactment of 10 U.S.C. § 1408 and 5 U.S.C. § 8345. The other question was whether Donna's award of maintenance— $750 per month for 36 months—was subject to modification. Our conclusions on the first appeal were: 1) that in the circumstances, the division of property could not be reopened to consider division of Jerry's military retirement benefits, and 2) that

Donna's award of maintenance was subject to modification *if* the motion to modify was filed within the 36–month stated term of the original decree. *In re Marriage of Quintard,* 691 S.W.2d 950 (Mo.App.1985).

Upon remand, the trial court heard evidence upon Donna's motion to modify the award of maintenance. The motion was filed on October 4, 1983, well within the stated term of the original award. After hearing evidence, the trial court modified the original decree. In pertinent part, the modification reads as follows:

"The Court finds that, although the original Decree limited separate maintenance for a period of thirty-six months, there has been a continuous and permanent change in circumstances due to [Donna's] health that justifies continuance of support for [Donna]. Taking into consideration [Jerry's] present income and expenses and [Donna's] income and expenses and her ability to support herself independently, the Court orders [Jerry] to pay to [Donna] the sum of $450.00 per month as and for maintenance until further order of this Court. In determining the amount of maintenance, the Court has considered the financial resources of [Donna] and her ability to meet her own needs independently, the age, and physical and emotional condition of [Donna], and the ability of [Jerry] to meet his own needs while meeting those of [Donna].

The court awards [Donna] the sum of –0– as and for attorney fee."

Both parties have appealed. Appeal No. 14810–2 is Jerry's appeal. Jerry's contention is that the original award of maintenance was not subject to modification because the change in circumstances occurred after the expiration of the 36–month stated term of the original award. Appeal No. 14804–2 is Donna's appeal. She maintains the trial court erred and abused its discretion in reducing the amount of the monthly maintenance award from $750 per month to $450 per month and abused its discretion in refusing to award her an attorney's fee. As a matter of convenience, we shall consider Jerry's appeal first.

Essentially, Jerry's appeal presents the same point which was presented on the first appeal. It is true that in considerable part, Donna's physical disability—the general condition of her health—deteriorated after the 36–month stated term of the original award had expired. A letter from Donna's physician—admitted in evidence by agreement—indicated that on December 9, 1985, her medical problems included: 1) Juvenile onset diabetes, insulin dependent but fairly well controlled; 2) Lumbosacral back disease which had required removal of a vertebral disc on March 21, 1985, and 3) Severe coronary heart disease which requires daily medication but is not susceptible of surgical correction. The heart disease was discovered in August 1985. In arguing that the award of maintenance was not modifiable, Jerry simply ignores the ruling of this court on the first appeal. The general rule is that the decision of an appellate court is the law of the case on all points presented and decided and remains the law of the case throughout all subsequent proceedings, both in the trial and appellate courts, and no question involved and decided on the first appeal of the cause will be considered on a second appeal, and on a retrial should not be considered by the trial court. *Feinstein v. McGuire,* 312 S.W.2d 20, 23[1] (Mo.1958); *State ex rel. Lankford v. Fidelity & Deposit Co. of Maryland,* 99 S.W.2d 476, 478 (Mo.App.1937). Of course, the doctrine of the "law of the case" is not an absolute doctrine; if a cause on appeal has been tried on controverted facts and there is a substantial difference in the evidence upon the second trial, the rule may not apply. *Norris v. Bristow,* 361 Mo. 691, 699, 236 S.W.2d 316, 319, 26 A.L.R.2d 366, 370–71 (1951). Nevertheless, when an appellate court construes a writing on the first appeal, that construction becomes the law of the case. *Bushman v. Barlow,* 321 Mo. 1052, 1059–60, 15 S.W.2d 329, 331–32[4] (banc 1929); *Knisely v. Leathe,* 178 S.W. 453, 457 (Mo.1915). Having held on the first appeal that the original award of maintenance is subject to modification, *In re Marriage of Quintard,* 691 S.W.2d at 954[5], this court will not reconsider the selfsame question. What we have just said is sufficient to dispose of Appeal No. 14810–2, which is Jerry's appeal.

The key and controlling principle on Appeal No. 14804–2, which is Donna's appeal, is whether there has been a showing of changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable. Section 452.-370.1, RSMo 1986; *In re Marriage of Hoglen,* 682 S.W.2d 179, 182 (Mo.App.1984). We must, of course, consider Donna's needs and Jerry's means, but we must bear in mind that a gross and permanent disparity between the parties' capacity to work and earn is a sound reason for an award of maintenance or, in a dissolution proceeding, a disproportionate award of income-producing property so as to accommodate the needs of the parties. *In re Marriage of Jadwin,* 671 S.W.2d 9, 10 (Mo.App.1984); *In re Marriage of Harrison,* 657 S.W.2d 366, 370[4, 5] (Mo.App.1983). A balancing factor is the policy of the courts to encourage and aid a spouse in becoming self-sufficient by education or training. *Doerflinger v. Doerflinger,* 646 S.W.2d 798, 800 (Mo. banc 1983). Donna seems to have been quite willing to work and to support herself to the extent her health has permitted. After the dissolution, Donna moved to Kansas City and worked for an insurance firm. She earned approximately $650 per month, before taxes. In the fall of 1980, she attended Kansas City Business College. She found she was unable to attend school full time and support herself. Donna then secured a better job at Pawn Truck Brokers, where she earned $800 per month as a bookkeeper. Thereafter, she was employed by the Kansas City Ad Club as a secretary and bookkeeper, where she earned $9,900 annually.

In the fall of 1982, Donna secured employment with a firm called Farmarco, working as a secretary. Her salary was $11,100 per year, but she was unable to continue her employment because she "failed [the] company physical [exam]." So, in February 1983, Donna began working for J.I. Case, where she earned between $16,000 to $18,000 annually, depend-

ing on the bonus she received. While she was employed by J.I. Case, Donna developed back trouble which required surgery. From March 4 to July 13, 1986, Donna was hospitalized. When she returned to work she found herself unable to perform her duties. She developed serious coronary disease. She was obliged to leave her employment. Since September 1986 Donna had tried a "low-pressure" job at a country club near her home but had found herself unable to work full-time. The physician's report which Donna presented to the court concludes thus:

"It is unknown at this time what [Donna's] prognosis entails. However, in view of her significant heart disease as well as insulin dependent diabetes, it is fair to say that her exercise tolerance will never enable her to return to the type of work she has previously performed."

In short, the letter indicates Donna has some minimal capacity to work and earn, but that the amount she will be able to earn is problematic.

■ Donna's needs, as presented, are modest. At counsel's request, she made a list of her expenses. She lives in a trailer in Belton, Missouri. Her monthly rent payment, including a payment on the lot, is $265. She estimated her utility bill, including trash collection, to be $187. She also estimated her other monthly expenses thus: $150 per month for food, including cleaning goods and medicine; $160.74 for medical expense; $202.91 for a car payment; $60.63 for insurance and taxes. Manifestly, this anticipation of expense is incomplete and probably inadequate. Even so, the total amount required to meet the expenses Donna anticipated is $1,067 per month. It is our view that Donna is entitled to a maintenance allowance at least as great as that she was receiving before the change in circumstances was shown, even though the reason for an allowance of maintenance has changed. Our courts have on many occasions held, directly or otherwise, that a wife's inability to work and earn because of ill health is a factor to be considered in awarding maintenance.

*See Steib v. Steib,* 672 S.W.2d 740 (Mo.App. 1984) [allowance justified because wife had sustained a disabling brain injury]; *Johnson v. Johnson,* 671 S.W.2d 426 (Mo.App. 1984) [physical problems which detracted from wife's ability to obtain full-time employment, a circumstance supporting an award of maintenance, even though wife had been "turned down" for disability benefits]; *In re Marriage of Jadwin,* 671 S.W.2d at 10 [award of rehabilitative maintenance justified in view of wife's crippling disease]; *Miller v. Miller,* 670 S.W.2d 591 (Mo.App.1984) [wife had diabetes; had had major surgery four times and was unable to drive. An award of maintenance was held justified].

■ A further question, of course, is whether a more substantial award of maintenance is reasonably within Jerry's means. Neither an award of child support nor an award of maintenance should be so great as to destroy the husband's initiative or impair his position. *See Morris v. Morris,* 549 S.W.2d 363, 365 (Mo.App.1977). Jerry has remarried and has adopted his present spouse's child. He and his present wife reside in the Washington, D.C., area; both are employed in Washington. The evidence concerning Jerry's present income and necessary expense is diffuse and difficult to follow. Upon direct examination, Jerry testified that his gross income from present employment was $1,441 "every two weeks" or about $500 per week "net." He also receives $1,599 per month military retirement pay, "net." If one accepts Jerry's testimony on direct examination, his "net" annual income is about $45,000. In response to interrogatories, Jerry prepared a statement of income and expenses (before us as Respondent's Exhibit "A") which also indicates that his "net" income is a little more than $45,000.

Copies of Jerry's federal income tax returns for the tax years 1980 to 1984 indicate that Jerry's taxable income has increased considerably. In 1980, Jerry's taxable income was $23,633; in 1981, his taxable income, as we calculate it, was $32,767. In 1982, Jerry's taxable income was $21,427; in 1983 his taxable income had risen to $46,254 and the 1984 return re-

flects a taxable income of $52,685. These figures appear to be accurate (some are barely legible) and certainly from the evidence it may be inferred that Jerry's income has increased considerably since he was divorced.

Jerry prepared a list of monthly expenses which cannot be squared, as it were, with his income. Tabulated, his monthly expenses were:

Monthly Expenses
Jerry Quintard

| | |
|---|---|
| VISA—LIVBAC | 50.00 |
| VISA—PFCU (JQ) | 105.00 |
| VISA—PFCU (MAQ) | 50.00 |
| CHOICE | 14.00 |
| J.C. PENNEY | 94.75 |
| PFCU | 272.00 |
| NS&T | 382.24 |
| | 967.99 |
| | |
| WOODROW QUINTARD | 150.00 |
| LIFE INSURANCE | 110.00 |
| AUTO INSURANCE | 85.00 |
| ELECTRICITY (AVG) | 115.10 |
| WATER | 20.49 |
| CONSERVANCY (TRASH PICKUP, ETC.) | 23.93 |
| TELEPHONE | 61.73 |
| SACC (BEFORE & AFTER SCHOOL CARE FOR ROBIN) | 148.25 |
| PARKING (HOFFMAN BUILDING FOR MARY ANNE) | 35.00 |
| BUS & METRO | 110.00 |
| GASOLINE | 120.00 |
| FOOD | 400.00 |
| CLOTHING | 180.00 |
| CITICORP—MORTGAGE | 1,809.09 |
| M.H.M.C.—MORTGAGE | 517.00 |
| LUNCHES & LUNCHEONS | 147.00 |
| CLEANING | 160.00 |
| AUTO MAINTENANCE | 150.00 |
| HOME MAINTENANCE | 100.00 |
| ENTERTAINMENT | 100.00 |
| MISCELLANEOUS | 200.00 |
| JEFF MONTHLY | 50.00 |
| AMY MONTHLY | 90.00 |
| AMY COLLEGE (ON A MONTHLY BASIS) | 560.80 |
| IRA | 333.34 |
| VACATIONS | 200.00 |
| MEDICAL/DENTAL | 50.00 |
| PERSONAL PROPERTY TAX | 71.37 |
| GIFTS | 200.00 |
| | 6,298.10 |
| TOTAL | 7,266.09 |

If Jerry's estimate of monthly expense is accepted, his total yearly expense would be $87,193. Jerry's testimony also indicates that at the time he was divorced, his necessary expenses were only $1,729 per month. The items of expense themselves, however, were submitted without supporting documentation and are properly subject to being discounted. *See Morris v. Morris,* 549 S.W.2d at 365. While we do not accuse

Jerry of dissimulation, and realize that his cost of living in or near Washington is much greater than it would be in Missouri, the fact remains that his disposable income is much greater than Donna's, and some of his newly-acquired debts are the result of indulgence, rather than the product of necessity. Only a slight reduction in his monthly expense would produce the difference between a maintenance award of $450 and $750.

We realize that we no longer review court-tried cases "de novo." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We also realize that if reasonable men could differ as to the propriety of an action taken by the trial court, there has been no abuse of discretion. *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448–49[2] (Mo. banc 1976); *James v. Turilli*, 473 S.W.2d 757, 763 (Mo.App.1971). Nevertheless our examination of the record convinces us there is no sound reason apparent of record for a reduction in the amount of maintenance. Donna is 48 years of age; she has demonstrated that she is willing to work. She can only work part-time, but at trial time she testified she was attempting to find part-time employment. Donna's sole liquid asset at trial time was an IRA account with a balance of about $1,700. Jerry, by contrast, is about 50 years of age, is employable, and has a disposable income of about $45,000 per annum, conservatively estimated. The maintenance award should be increased to $750 per month. It is so ordered.

Donna also contends that she should have been allowed an attorney's fee. We agree. Counsel suggests that we fix the amount of the award. If we knew what services had been rendered after the entry of the judgment, then we might determine the reasonable value of those services. *Westrich v. Westrich*, 694 S.W.2d 873, 879–80[3] (Mo.App.1985). The original decree allowed Donna attorney's fees and suit money in the aggregate amount of $3,769.70. As this court pointed out in *Murphy v. Grisham*, 625 S.W.2d 215, 217[3, 4] (Mo.App.1981), the reasonable value of legal services rendered depends on a number of factors and usually must be determined on the facts of the individual case. The record presented on this appeal is simply not adequate for this court to fix the value of the legal services rendered by Donna's attorney since the entry of the original judgment. The cause is reversed and remanded for the purpose of fixing and awarding Donna a reasonable attorney's fee, to be paid directly to the attorney.

FLANIGAN and MAUS, JJ., and PREWITT, P.J., concur.