STATE of Missouri, ex rel. INTER–
CITY BEVERAGE CO., INC.,
et al., Appellants,

v.

MISSOURI PUBLIC SERVICE
COMMISSION, et al.,
Respondents,

Kansas City Power & Light Co.,
Intervenor–Respondent.

No. WD 54043.

Missouri Court of Appeals,
Western District.

April 21, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Jeremiah D. Finnegan, C. Edward Peterson, Finnegan, Conrad & Peterson, L.C., Dennis E. Egan, The Popham Law Firm, P.C., Kansas City, for appellants.

David Woodsmall, Jefferson City, for Respondent, Missouri Public Service.

Michael J. Thompson, William G. Riggins, Kansas City, for Intervenor–Respondent.

Before ULRICH, C.J., P.J., and SMART and LAURA DENVIR STITH JJ.

ULRICH, Chief Judge, Presiding Judge.

Appellants, Inter–City Beverage Company, Inc. and seven other industrial and business customers of Kansas City Power & Light Company (KCPL), appeal the circuit court's decision affirming the Report and Order of the Missouri Public Service Commission (PSC). In the Report and Order, the PSC dismissed the Appellants' complaint against KCPL and found that the higher billing demand contained within the determination of demand provision of KCPL's rate schedules (or tariffs) had been properly applied by KCPL to all commercial customers. On appeal, Appellants contend that the Report and Order was unlawful in that the PSC misconstrued the determination of demand provision. The judgment of the trial court affirming the PSC's Report and Order is affirmed.

## FACTS

This case originally began in August of 1993 when Appellants filed a class action lawsuit in Jackson County Circuit Court against KCPL alleging that KCPL had misinterpreted and misapplied the determination of demand provision contained in its rate schedules resulting in overcharges to Appellants and other commercial and industrial customers. KCPL filed a motion to dismiss arguing that primary jurisdiction over the construction of the rate schedules properly rested with the PSC. The motion was granted by the trial court, and the case was appealed. This court affirmed the trial court's dismissal in *Inter–City Beverage Co., Inc. v. Kansas City Power & Light Co.*, 889 S.W.2d 875, 878 (Mo.App.1994), holding that Chapters 386 and 393, RSMo 1986 & Supp.1993, conferred primary jurisdiction over the determination of rates upon the PSC.

Appellants subsequently filed a complaint with the PSC alleging that KCPL had overcharged them by misinterpreting the applicable tariff provision and sought construction of the provision. Following an evidentiary hearing, the PSC issued its Report and Order finding that KCPL had properly applied the higher billing demand contained in the determination of demand provision to all commercial customers. The circuit court affirmed the PSC's Report and Order on writ of review. This appeal followed.

The sole issue on appeal is whether the PSC misconstrued the determination of demand provision in finding that KCPL correctly imposed the higher billing demand contained in the provision in calculating Appellants' billing demand. The determination of demand provision in KCPL's rate schedules specifies the method to be utilized by the utility company for calculating monthly "billing demand." The "billing demand" is

then utilized to compute the "demand charge" and the "energy charge," the two components of the monthly billing charged to each commercial and industrial customer. The demand charge is the component at issue in this case. The purpose of the demand charge is to recover certain fixed investment and operating costs incurred in the generation, transmission, and distribution of electricity to customers that are not recovered on the basis of electric usage. The rationale behind the calculation of the demand charge is that KCPL must have the generation, transmission, and distribution capacity available at all times to serve the maximum demand of all customers on its system. Thus, the demand charge reflects the cost of maintaining sufficient electric generating capacity to meet the customers' peak demand needs.

The determination of demand provision in question in this case contained two alternative billing demands and read:

Demand will be determined by demand instruments or, at the Company's option, by demand tests. The billing demand for any month included in the Summer Season shall be the highest demand indicated in any 30–minute interval during that month or such higher minimum billing demand as may be *established by contract*. The billing demand for any month included in the Winter Season shall be 70% of the highest demand indicated during that month or such higher billing demand as may be *established by contract*.

The minimum billing demand *established by contract* shall be not less than ten kw for secondary electric service nor less than the higher of:

(i) 80% of the highest billing demand occurring on that portion of the Summer Season included in the 12–month period ending with the current month; or

(ii) 50% of the highest billing demand occurring in that portion of the Winter Season included in the 12–month period ending with the current month. (Emphasis added).

The "established by contract" language was disputed in this case.[1] In calculating the

Appellants' bills, KCPL utilized the higher billing demand contained in the second paragraph of the provision. Appellants complained that they had no separate contracts with KCPL that would have allowed KCPL to bill at the higher demand. They contended, therefore, that they should have been billed at the lower billing demand found in the first paragraph.

## STANDARD OF REVIEW

On appeal, an appellate court reviews the decision of the PSC, not the judgment of the circuit court. *Friendship Village of South County v. Public Serv. Comm'n of Missouri*, 907 S.W.2d 339, 344 (Mo.App. 1995). The scope of review of the PSC's order is two-pronged. First, the legality of the order is determined. *Id.; State ex rel. Util. Consumers Council of Missouri, Inc. v. Public Serv. Comm'n of Missouri*, 585 S.W.2d 41, 47 (Mo. banc 1979). If the order is lawful, the reasonableness of the order and whether the order is predicated on competent and substantial evidence upon the whole record are determined. *Id.* The PSC's order is presumptively valid, and those attacking it have the burden of proving its invalidity. *Id.*

## LAWFULNESS OF REPORT AND ORDER

The lawfulness of an order of the PSC depends on whether statutory authority for its issuance exists. *Id.* In determining whether the PSC's order was lawful, an appellate court need not defer to the PSC, but must exercise unrestricted, independent judgment and correct erroneous interpretations of the law. *Id.* In this case, the PSC concluded in its Report and Order that the higher billing demand contained in the second paragraph of the determination of demand provision was applicable to all commercial customers including Appellants. The PSC's decision was based on the drafter's intent, previous interpretations of the provision, and the historical context of the language of the provision. Thus, the lawfulness of the PSC's Report and Order in this case

---

1. In September 1992, the emphasized language was removed from KCPL's determination of demand provision. Appellants do not dispute charges following that time.

depends on whether the PSC had the statutory authority to determine which of two alternative billing demands contained in KCPL's determination of demand provision applied to Appellants, industrial and business customers of KCPL.

Section 393.140(11), RSMo 1994, provides that the PSC shall have power to compel each utility to file with the PSC its schedule of rates to be charged for various services rendered to its customers. The statute states, in pertinent part, that the PSC shall:

> Have power to require every ... electrical corporation ... to file with the commission ... all rates and charges made, established or enforced or to be charged or enforced.... No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service *rendered or to be rendered* than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time.... The commission shall also have the power to establish such rules and regulations, to carry into effect the provisions of this subdivision, as it may deem necessary, and to modify and amend such rules or regulations from time to time.

§ 393.140(11), RSMo 1994 (emphasis added). Section 393.130.2, RSMo 1994, secures equality of services and rates for all who need or desire the services and who are similarly situated. It provides, in pertinent part:

> No ... electrical corporation ... shall directly or indirectly by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person or corporation a greater or less compensation for ... electricity ... *rendered or to be rendered* or in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions.

§ 393.130.2, RSMo 1994 (emphasis added). Finally section 386.390, RSMo 1994, permits any person or corporation to file a complaint with the PSC against a public utility where that utility has violated any provision of law, or any rule, order, or decision of the PSC. It provides, in pertinent part:

> Complaint may be made by ... any corporation or person ... by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any ... public utility, including any rule, regulation or *charge heretofore established or fixed by* or for any ... public utility, in violation, or claimed to be in violation, of any provision of law, or of any rule or order or decision of the commission.

§ 386.390.1, RSMo 1994 (emphasis added). These statutory provisions give the PSC jurisdiction to regulate and fix rates or charges for public utilities and to determine the proper classification of the consumers to whom such rates or charges apply. *State ex rel. Laundry, Inc. et al. v. Public Service Comm'n et al.,* 327 Mo. 93, 34 S.W.2d 37, 43 (1931).

■ In 1942, the Missouri Supreme Court considered whether the PSC had statutory authority to determine and classify which of two approved rates apply to a public utility customer. *State ex rel. and to Use of Kansas City Power & Light Co. v. Buzard,* 350 Mo. 763, 168 S.W.2d 1044 (1943). Applying sections 5645, 5646, and 5686, RSMo 1939, the predecessors to sections 393.130, 393.140, and 386.390, RSMo 1994, respectively, the Court concluded,

> [I]f an electric utility has two approved rates and renders service to a consumer of electricity, charging the consumer the higher rate, and the consumer contends the service rendered puts him in the classification of the lower rate, then that consumer can file a complaint before the Commission [PSC] for it to determine his proper classification in reference to the service rendered him under schedule to the two rates. The power of the Commission to classify is not limited to the service to be rendered, but it has power to determine the classification of the service rendered. This is true because the two above quoted sections [§§ 5646 and 5686] say "any service rendered or to be rendered."

The legislature, realizing that to make proper classification as to the service ren-

dered and the applicable rate for such service, has wisely left the technical facts to be determined by experts of the Public Service Commission.

*Id.* 168 S.W.2d at 1047. *See also Friendship Village,* 907 S.W.2d at 348–349 (where the Western District determined that the PSC's order, which found that electric company charged retirement communities under proper rate classification, was lawful and reasonable). In this case, KCPL's determination of demand provision contained two alternative billing demands. KCPL rendered service to Appellants under the determination of demand provision and charged Appellants the higher billing demand contained in the second paragraph of the provision. Appellants then filed a complaint against KCPL with the PSC for it to determine their proper classification in reference to the service rendered and to the two billing demands found in the determination of demand provision. The legislature has left the classification of services rendered and the applicable rates for such service to the PSC. The PSC, therefore, was statutorily permitted to rule on the issue of which of two approved billing demands found in KCPL's determination of demand provision was applicable to Appellants, and its Report and Order was lawful.

## REASONABLENESS OF REPORT AND ORDER

■ Finding the PSC's Report and Order lawful, the reasonableness of the Report and Order is considered. The reasonableness of the PSC's order depends on whether it was supported by competent and substantial evidence upon the whole record; whether it was arbitrary, capricious, or unreasonable; or whether the PSC abused its discretion. *Consumers Council,* 585 S.W.2d at 47; *Friendship Village,* 907 S.W.2d at 344–345. A reviewing court must consider the evidence in the light most favorable to the PSC together with all reasonable supporting inferences. *Friendship Village,* 907 S.W.2d at 345. A reviewing court's judgment will not be substituted for that of the PSC, and the PSC's order will not be set aside unless it is clearly contrary to the overwhelming weight of the evidence. *Id.*

Before the PSC, Appellants claimed that the clear and unambiguous language of the determination of demand provision required that KCPL have a separate, written contract with each of its industrial and large commercial customers to charge the higher billing demand contained in the second paragraph. Stating that they did not have a separate contract with KCPL, Appellants argued that they were overcharged when KCPL utilized the higher billing demand.

KCPL argued that the "established by contract" language was ambiguous in that it was unclear as to whether "contract" meant a separate, written contract, as Appellants argued, or the implied service agreement between KCPL and its customers. KCPL asserted that extrinsic evidence such as the prior interpretation and application of the language revealed that "contract" meant the implied service agreement and, thus, the higher billing demand was applicable to any customer with an implied contract.

■ The PSC reviewed the determination of demand provision in context with the entire tariff and found that the term "contract" was ambiguous. To determine the meaning of "contract," the PSC, therefore, relied on extrinsic evidence introduced at the evidentiary hearing. It reviewed prior rate cases in which the applicable tariff was established, approved, and interpreted to determine the tariff drafter's intent. This evidence revealed that since 1951, the determination of demand provision has been uniformly applied to all commercial customers regardless of whether a separate contract existed. This evidence regarding intent, prior interpretations, and the history of the provision was substantial and credible and supported the PSC's findings. The PSC's Report and Order was not arbitrary, capricious, or unreasonable, and was not an abuse of its discretion.

The judgment of the trial court affirming the PSC's Report and Order is affirmed.

All concur.