STATE of Missouri, ex rel. ALMA
TELEPHONE COMPANY, et
al.

and

State of Missouri, ex rel. BPS
Telephone Company, et
al., Respondents,

v.

PUBLIC SERVICE COMMISSION OF
THE STATE OF MISSOURI,
Appellant.

No. WD 58324.

Missouri Court of Appeals,
Western District.

Jan. 16, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2001.

Keith R. Kruger, Jefferson City, for appellant.

Craig Steven Johnson, Jefferson City, for respondent Alma Telephone Company.

William Ross England III, Jefferson City, for respondent BPS Telephone Company.

Before BRECKENRIDGE, P.J., ULRICH, J. and HOWARD, J.

ULRICH, J.

The Missouri Public Service Commission (Commission) appeals the decision of the trial court overturning the Commission's Reports and Orders issued June 10, 1999, in Case No. TO–99–254, and cases consolidated therewith, as modified and clarified by the Commission's subsequent orders in the various consolidated cases, and remanding the cause to the Commission. In its Reports and Orders, the Commission directed that the Primary Toll Carrier (PTC) Plan, the established plan for routing and charging long distance calls in rural Missouri, be terminated on October 20, 1999, and proposed a mechanism that

would allow Respondents, BPS Telephone Company, et al.[1], and Alma Telephone Company, et al.[2], (Telephone Companies) to achieve revenue neutrality after termination of the plan. On appeal, the Respondent Telephone Companies contend that (1) the doctrines of the law of the case and res judicata barred the Commission from relitigating the revenue neutrality issue first determined by the circuit court in the preceding case without appeal and raised again in this appeal from the subsequent case, and (2) the revenue neutrality mechanism in the Commission's Reports and Orders was unlawful because (a) the mechanism shifted the burden of proof to the Respondent Telephone Companies to show that their present rates and revenues are reasonable and (b) the mechanism constituted retroactive ratemaking. The judgment of the trial court is affirmed.

## I. FACTS

The Telephone Companies are small telephone companies providing local telecommunication services and interexchange access services in rural areas of the State of Missouri. Missouri is divided into four long distance calling areas known as "local access and transport areas" or "LATAs." IntraLATA calls are long distance calls that are outside a customer's local calling scope but within a LATA.

In 1987, in Case Nos. TO–84–222 et al. (the first PTC case or PTC I), the Commission established the Primary Toll Carrier (PTC) Plan. The PTC Plan required that all "single-digit plus number" (1 + or 0 +) intraLATA toll calls be carried by one of four incumbent local exchange telecommunications companies (LECs) designated as Primary Toll Carriers or PTCs. The PTCs were Southwestern Bell Telephone Company, GTE Midwest Incorporated, Sprint Missouri, Inc., and Fidelity Telephone Company. All other LECs, including the Telephone Companies, were designated as Secondary Carriers or SCs. Other long distance carriers could provide intraLATA toll services in competition with the PTCs, but customers had to dial a special access code in order to complete calls.

The PTC Plan required that each SC deliver all single-digit plus dialed intraLATA toll calls originating from the SC service area to the PTC that served the SC. The PTC carried all such calls, paid all associated expenses, and retained all associated toll revenues. One such associated expense was the originating and terminating access paid by the PTC to the SC.

The enactment of the Federal Telecommunications Act of 1996, however, jeopardized the PTC Plan. Section 251(b)(3) of the Act required LECs to allow competing

1. BPS Telephone Company, et al., is a group of small rural telephone companies comprised of BPS Telephone Company, Citizens Telephone Company of Higginsville, Mo., Inc., Craw Kan Telephone Cooperative, Inc., Ellington Telephone Company, Farber Telephone Company, Goodman Telephone Company, Granby Telephone Company, Grand River Mutual Telephone Company, Green Hills Telephone Company, Holway Telephone Company, Iamo Telephone Company, Kingdom Telephone Company, KLM Telephone Company, Lathrop Telephone Company, Le Ru Telephone Company, McDonald County Telephone Company, Mark Twain Rural Telephone Company, Miller Telephone Company,

New London Telephone Company, Orchard Farm Telephone Company, Oregon Farmers Mutual Telephone Company, Ozark Telephone Company, Seneca Telephone Company, Steelville Telephone Exchange, Inc., and Stoutland Telephone Company.

2. Alma Telephone Company, et al., is a group of small rural telephone companies comprised of Alma Telephone Company, Chariton Valley Telephone Company, Choctaw Telephone Company, MoKan Dial, Inc., Modern Telecommunications Company, Northeast Missouri Rural Telephone Company, and Peace Valley Telephone Company.

long distance carriers to provide intra-LATA long distance service on a single-digit plus (1 +) basis rather than requiring customers to use an access code. This requirement was referred to as "dialing parity." The customers' ability to select their own long distance carrier for single digit plus intraLATA calls was also called "intraLATA presubscription."

After passage of the Act, the Federal Communications Commission (FCC) adopted rules to guide the states on how to implement dialing parity. Thereafter, in November 1996, the Commission's staff filed a motion requesting the Commission to establish a case for the purpose of investigating whether to modify or terminate the PTC Plan in light of the FCC's dialing parity requirement. This case was designated Case No. TO–97–217 (the second PTC case or PTC II). An evidentiary hearing was held before the Commission in PTC II in October 1997.

The Commission issued its Report and Order in PTC II on March 12, 1998. In its Order, the Commission determined that the clear mandate of the Telecommunications Act of 1996 was to establish a competitive environment in the telecommunications industry and that the PTC Plan was incompatible with a competitive environment and inconsistent with the implementation of intraLATA presubscription. Thus, the Commission found that the PTC Plan must be phased out on a schedule that coincides with the implementation of intraLATA presubscription and ordered it completely eliminated in all exchanges by February 28, 1999. It concluded that the most effective replacement for the PTC Plan was an Originating Responsibility Plan (ORP) where each SC would be designated as an intraLATA toll carrier of last resort (ITCOLR) and would bear the responsibility for making intraLATA toll service available to its customers.

The Commission established a technical committee to consider issues and make recommendations to it regarding the specific implementation of intraLATA presubscription. It directed that implementation of intraLATA presubscription must begin for all Missouri local exchange carriers on June 1, 1998; that each local exchange company file its implementation plan for intraLATA presubscription no later that June 15, 1998; and that implementation of intraLATA presubscription be completed in every exchange in the state no later than December 1, 1998.

The Commission directed that the technical committee "consider to what extent revenue neutrality is desirable and achievable, bearing in mind the necessity of eliminating the requirement that PTCs purchase billing and collection services from SCs." The Commission found that the existing rate of return regulation mechanism is adequate to address any problem of over- or under-recovery that may arise in the wake of elimination of the PTC Plan and that an SC that experiences revenue losses impacting its provision of basic local service has access to the Commission's procedures for relief.

The Telephone Companies thereafter filed a petition for writ of review of the Commission's Report and Order in PTC II. The trial court reversed the Commission's Report and Order on September 11, 1998, finding it to be unlawful and unreasonable. The court found that as a consequence of the elimination of the PTC Plan, PTCs were authorized to stop providing intraLATA toll services in the Telephone Companies' exchanges and were, thereby, also relieved of the obligation to purchase tariffed billing and collections services from the Telephone Companies for IntraLATA calls thus causing the companies to suffer reduced revenues in the future. The court also found that the Commission

did not calculate the financial impact of eliminating the PTC Plan on the Telephone Companies. The court noted that the Commission did not find any of the Telephone Companies' tariffed rates or revenues to be unreasonable, unlawful, or excessive although it recognized that the change from the PTC Plan to an ORP could cause the Telephone Companies to lose revenues and incur new expenses. Finally, the court found that the Commission provided in its order that any of the Telephone Companies that subsequently experienced revenue losses could file a rate case under the Commission's existing rate base/rate of return regulation procedures to attempt to recover the loss or, in other words, that the Commission determined that the Telephone Companies were "not entitled to be kept whole for the revenue losses that [would] be experienced as part of the process of replacing the PTC Plan with an ORP."

In its conclusions of law, the trial court determined that the Commission's denial of revenue neutrality to those companies that would experience revenue losses as a result of the transition to an ORP arrangement was an unconstitutional taking of revenues without due process and was a revenue reduction imposed by the Commission without considering all relevant factors. It held that the Telephone Companies' tariffed access and billing and collection rates and revenues were *prima facie* lawful and reasonable until found otherwise; that the Commission's Report and Order did not find any of the Telephone Companies' rates or revenues to be unlawful or unreasonable; and that the Commission's invitation to the companies to file rate proceedings if they were adversely affected by its decision was an unlawful shifting of the burden of proof to the companies. The court concluded that the Commission could not lawfully eliminate the PTC Plan and require the Telephone

Companies to provide intraLATA toll service in their respective exchanges without either engaging in a financial analysis of the companies or providing a revenue neutrality mechanism assuring that the companies' earnings would not be financially impacted. Thus, the court reversed the Commission's Report and Order and remanded the case to the Commission for the purpose of conducting a new hearing in a manner consistent with its judgment. The Commission did not appeal the trial court's judgment in PTC II.

On remand, the Commission entered an order in December 1998 closing the second PTC case and established a new case, designated as Case No. TO–99–254 (the third PTC case or PTC III), to consider the issues of termination of the PTC Plan and implementation of intraLATA dialing parity (ILDP). On March 23, 1999, the FCC ordered those LECs that had not already filed ILDP implementation plans with their respective state utility commissions to file those plans by no later than April 22, 1999. The FCC order anticipated state commission action on the ILDP implementation plans by June 22, 1999, and all LECs were to implement their plans no later than thirty days after the date they were approved or deemed approved under this schedule. The Respondent Telephone Companies complied with the FCC's requirements by filing their ILDP implementation plans on April 22, 1999, and the Commission opened individual cases to examine each company's ILDP implementation plan. The Commission then consolidated the individual ILDP plan cases with the third PTC case on April 29, 1999. On May 17 through 26, 1999, the Commission held a hearing on the consolidated cases.

The Commission issued its Report and Order in PTC III on June 10, 1999. As in PTC II, the Commission found that the PTC Plan was incompatible with competi-

tion and, therefore, ordered it terminated on October 20, 1999. On the same day, the Commission also issued its separate Reports and Orders in the individual ILDP plan cases approving the Telephone Companies' implementation plans and ordering the implementation to begin on July 22, 1999. The Reports and Orders in PTC III and in the ILDP plan cases also covered the revenue neutrality issue.

The Commission stated in its Reports and Orders in the individual ILDP plan cases that although it did not agree that the Telephone Companies had a "right" to revenue neutrality or to certain levels of revenues, it would allow the companies to achieve revenue neutrality at the time they implemented their ILDP plans. The Commission explained that it would allow the Telephone Companies to file tariffs implementing revenue neutrality only if the tariffs were interim and subject to refund and if the Telephone Companies committed to filing a general rate case within eight to ten months after October 20, 1999, in which all relevant factors would be examined. The Commission declared that the Telephone Companies' interim increases shall be subject to refund based upon a subsequent examination of actual revenue changes for a period of time after the termination of the PTC Plan:

> The parties shall address, in the rate case, the issues of the amount of any decrease in revenues [the Telephone Companies] suffered as a result of the elimination of the PTC plan, and whether the interim tariffs over-recovered the decreases in revenues. [The Telephone Companies] shall bear the burden of proof on these issues. [The Telephone Companies] shall refund any amount determined to be over-recovery to each of the entities that paid the interim increase, according to the percentage that entity paid.

The Commission also explained its proposed revenue neutrality mechanism in its Report and Order in PTC III. It again stated that each company that requested revenue neutrality would be required to file a general rate case once it had operated for a period of time after termination of the PTC Plan. The refund provision in the Commission's Report and Order in PTC III, however, differed somewhat from the refund provision in its orders in the individual ILDP plan cases. The Commission explained in its order in PTC III:

> If it turns out that the [Telephone Company] did in fact need the revenue neutrality surcharge to continue to earn a reasonable return, it need not refund any of it. A refund will only be required if an audit indicates that the [Telephone Company] would have earned a reasonable return without the surcharge. Even then, the only refund it will be required to make is the difference between what it collected through the surcharge and the amount it needed to collect to earn a reasonable return.

Following the Commission's issuance of its Reports and Orders in PTC III and in the individual ILDP plan cases, the Telephone Companies filed their motions for clarification and applications for rehearing on June 18, 1999. The Telephone Companies first noted the difference in the refund provisions in the orders. They then argued that the Commission's proposed revenue neutrality mechanism, the interim rates subject to refund coupled with the requirement of a subsequent rate case, was unlawful and unreasonable because it constituted retroactive ratemaking and it would shift the burden to the Telephone Companies that raise their rates to achieve revenue neutrality after elimination of the PTC Plan to prove that their rates are reasonable.

The Commission responded to the Telephone Companies' arguments in its July 15, 1999 rehearing order. In the order, the Commission once again emphasized that it did not agree that the Telephone Companies had a constitutional right to revenue neutrality after elimination of the PTC Plan. Instead, the Commission explained, "A better statement of the concept is that a utility has a right to the opportunity to earn a reasonable return on the investment it has made to serve the public." The Commission also found that the Telephone Companies that file rate increases to implement revenue neutrality should bear the burden of proof to show that such increases are necessary. Finally, the Commission found that in most circumstances, requiring a utility to file a rate case would not be appropriate but that in this case, with the time strictures imposed by the FCC, insufficient time existed for the Commission to examine all relevant factors to determine whether the rate increase was warranted before implementing ILDP and eliminating the PTC Plan.

The Telephone Companies filed with the trial court a petition for writ of review of the Commission's June 10, 1999 Reports and Orders in PTC III and the consolidated ILDP plan cases on August 10, 1999. On January 27, 2000, the trial court entered its judgment reversing the Commission's Reports and Orders. The trial court held that its prior, unappealed judgment in PTC II, which found that the Telephone Companies must be afforded revenue neutrality as the PTC Plan was terminated and that the Commission had failed to properly provide it, became the law of the case and barred the Commission from relitigating the revenue neutrality issue in this case. The trial court also found that the doctrine of res judicata barred the Commission from relitigating the revenue neutrality issue. The trial

court's judgment ruled that: (1) the Telephone Companies' tariffed access and billing and collection rates and revenues that they collected prior to the elimination of PTC Plan were *prima facie* lawful and reasonable until found otherwise; (2) the Commission's elimination of the PTC Plan will result in the Telephone Companies' loss of such revenues, yet the Commission did not find any of the Telephone Companies' rates or revenues to be unlawful or unreasonable; and (3) the Commission's proposed revenue neutrality mechanism of interim rates subject to refund coupled with the requirement of a subsequent rate case unlawfully shifted the burden of proof to the Telephone Companies and constituted retroactive ratemaking in violation of Missouri law. The trial court, therefore, reversed the June 10, 1999 Reports and Orders of the Commission in the consolidated cases and remanded the cases to the Commission for the purpose of clarifying the revenue neutrality issue in a manner consistent with its judgment. This appeal followed.

## II. STANDARD OF REVIEW

On appeal, an appellate court reviews the decision of the Commission, not the judgment of the trial court. *State ex rel. Midwest Gas Users' Ass'n. v. Public Serv. Comm'n of State of Mo.*, 976 S.W.2d 470, 476 (Mo.App. W.D.1998); *State ex rel. Inter–City Beverage Co., Inc. v. Missouri Public Serv. Comm'n*, 972 S.W.2d 397, 399 (Mo.App. W.D.1998). The Commission's order is presumptively valid, and those attacking it have the burden of proving its invalidity. *Inter–City Beverage Co.*, 972 S.W.2d at 399. Review of the Commission's order is conducted using a two-part test. *Midwest Gas Users' Ass'n*, 976 S.W.2d at 476; *Inter–City Beverage Co.*, 972 S.W.2d at 399. First, the lawfulness of the order is determined. *Id.* The law-

fulness of an order of the Commission depends on whether statutory authority for its issuance exists. *Id.* In determining whether the Commission's order is lawful, an appellate court must exercise unrestricted, independent judgment and correct erroneous interpretations of the law. *Id.*

■ If the Commission's order is lawful, the reasonableness of the order is next considered. *Id.* An order's reasonableness depends on whether it is supported by substantial and competent evidence on the whole record; whether it is arbitrary, capricious, or unreasonable; or whether the Commission abused its discretion. *Midwest Gas Users' Ass'n,* 976 S.W.2d at 476; *Inter–City Beverage Co.,* 972 S.W.2d at 401. An appellate court must consider the evidence together with all reasonable supporting inferences in the light most favorable to the Commission's order. *Inter–City Beverage Co.,* 972 S.W.2d at 401. An appellate court may not substitute its judgment for that of the Commission, and the Commission's order will not be set aside unless it is clearly contrary to the overwhelming weight of the evidence. *Id.*

## III. LAW OF THE CASE

■ In the dispositive point in this appeal, the Telephone Companies argue that the Commission was barred by the doctrine of law of the case from relitigating in PTC III the issue of revenue neutrality upon elimination of the PTC Plan.

■ The doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal. *State v. Graham,* 13 S.W.3d 290, 293 (Mo. banc 2000); *Rodriguez v. Suzuki Motor Corp.,* 996 S.W.2d 47, 61 (Mo. banc 1999). The doctrine governs successive adjudications involving the same issues and facts. *Shahan v. Shahan,* 988 S.W.2d 529, 533 (Mo. banc 1999). Generally, the decision of a court is the law of the case for all points presented and decided, as well as for matters that arose prior to the first adjudication and might have been raised but were not. *Graham,* 13 S.W.3d at 293; *Shahan,* 988 S.W.2d at 533.

■ The doctrine of law of the case, however, is not absolute. *In re Marriage of Quintard,* 735 S.W.2d 388, 390 (Mo.App. S.D.1987). Rather, the doctrine is a rule of policy and convenience; a concept that involves discretion. *Bandy v. State,* 847 S.W.2d 93, 94 (Mo.App. W.D.1992). An appellate court has discretion to refuse to apply the doctrine where the first decision was based on a mistaken fact or resulted in manifest injustice or where a change in the law intervened between the appeals. *Graham,* 13 S.W.3d at 293; *Bandy,* 847 S.W.2d at 94–95; *Williams v. Ford Motor Co.,* 454 S.W.2d 611, 614 (Mo.App.1970). Additionally, where the issues or evidence on remand are substantially different from those vital to the first adjudication and judgment, the rule may not apply. *State ex rel. Chicago, Rock Island and Pacific Railroad Co. v. Public Serv. Comm'n,* 335 S.W.2d 182, 183–184 (Mo. banc 1960); *State ex rel. Anderson Motor Serv. Co. v. Public Serv. Comm'n,* 234 Mo.App. 470, 134 S.W.2d 1069, 1075 (Mo.App.1939), *adopted by* 348 Mo. 613, 154 S.W.2d 777 (1941); *Pinkston v. Ellington,* 845 S.W.2d 627, 629 (Mo.App. E.D.1992); *Quintard,* 735 S.W.2d at 390.

In PTC II, the trial court reversed the Commission's Report and Order as unlawful and unreasonable. The court found that upon elimination of the PTC Plan, the PTCs would be authorized to stop providing intraLATA toll services in the Telephone Companies' exchanges and would be relieved of the obligation to purchase tar-

iffed billing and collection services from the Telephone Companies. Consequently, the Telephone Companies would suffer reduced revenues. The trial court's PTC II judgment held that the Telephone Companies' tariffed access and billing and collection rates and revenues were *prima facie* lawful and reasonable until found otherwise; that the Commission did not find any of the Telephone Companies' rates or revenues to be unlawful or unreasonable when it ordered the PTC Plan to be eliminated; and that the Commission's invitation to file rate proceedings in the future if the Telephone Companies were adversely affected by its decision was an unlawful shifting of the burden of proof to the companies. Finally, the trial court concluded that the Commission could not lawfully eliminate the PTC Plan and require the Telephone Companies to provide intra-LATA toll service in their respective exchanges without either engaging in an analysis of the financial impact on the companies or providing a revenue neutrality mechanism assuring that the companies' earnings would not be adversely impacted. Thus, the court remanded the cause to the Commission for the purpose of conducting a new hearing in a manner consistent with its judgment.

The Commission did not challenge the trial court's PTC II judgment by seeking appellate review and, thus, acquiesced in it. The trial court's decision in PTC II, therefore, became the law of the case in all subsequent proceedings regarding the litigated issues unless one of the exceptions to the doctrine applies. *State v. Johnson*, 22 S.W.3d 183, 189 (Mo. banc 2000); *Chicago, Rock Island and Pacific Railroad Co.*, 335 S.W.2d at 183–184; *Anderson Motor Serv. Co.*, 134 S.W.2d at 1075–1076; *Davis v. General Elec. Co.*, 991 S.W.2d 699, 704 (Mo.App. S.D.1999).

In this appeal, the Commission does not contend that the trial court's decision in PTC II was based on a mistaken fact or resulted in manifest injustice or that a change in the law occurred between PTC II and PTC III. The Commission and Intervenor Southwestern Bell Telephone Company do contend, however, that the facts on remand were significantly different from the facts in PTC II, and, therefore, it was not bound in PTC III by the trial court's judgment in PTC II.

First, the Commission contends that unlike PTC II, the Telephone Companies' specific ILDP plans were considered when the Commission made its decision in PTC III. In its Report and Order in PTC II, the Commission discussed implementation of intraLATA dialing parity in general terms, established a technical committee to consider issues and make recommendations regarding the specific implementation of the plans, and set deadlines for when local exchange companies must file their plans for implementation and for when the implementation must be completed. On remand in PTC III, the Commission considered the Telephone Companies' specific plans for implementing intraLATA dialing parity, which were filed in April 1999, and ultimately approved them.

Next, Southwestern Bell contends that the facts in PTC III were substantially different than those in PTC II in that the Commission ordered in PTC II that the PTC Plan would be replaced by an ORP arrangement in which the Telephone Companies would be required to provide intraLATA toll services to the customers in their exchanges but that in PTC III it only terminated the PTC Plan and did not order implementation of an ORP. Thus, Southwestern Bell argues, the trial court's ruling in PTC II as to the Commission's obligation to provide revenue neutrality was for a situation much more limited than

simply a transition away from the PTC Plan as in PTC III.

The Commission's consideration of the Telephone Companies' individual ILDP plans in PTC III as opposed to its general consideration of implementation of intraLATA dialing parity in PTC II and its decision not to implement an ORP arrangement in PTC III did not, however, constitute different facts vital to the issue in controversy in this case. Both contentions involve a difference in facts between PTC II and PTC III regarding what arrangement would be implemented after the PTC Plan was finally eliminated. The issue in controversy in this case was the Commission's proposed mechanism to provide revenue neutrality to the Telephone Companies upon elimination of the PTC Plan. And the facts vital to this issue remained unchanged in both cases. In PTC II and PTC III, the Commission recognized that the PTC Plan was incompatible and inconsistent with competition. In both cases, the Commission's ultimate objective was the implementation of intraLATA presubscription or dialing parity as required by the Federal Telecommunications Act of 1996. And in both cases, the Commission determined that elimination of the PTC Plan was necessary to accomplish this goal. The adverse effect on the Telephone Companies' revenues caused by elimination of the PTC Plan was undisputed. In PTC II, the Commission proposed a mechanism to provide revenue neutrality to the Telephone Companies upon elimination of the PTC Plan. The Commission proposed that any company that experienced revenue losses could file a subsequent rate case. The trial court, however, determined that this mechanism was unlawful. In PTC III, the Commission again attempted to utilize the same mechanism to provide revenue neutrality upon elimination of the PTC Plan. Whether the Commission considered general implementation of intraLATA dialing parity or the Telephone Companies' specific, individual ILDP plans was immaterial to the financial effect the elimination of the plan would have on the Telephone Companies or the Commission's resultant obligation to provide revenue neutrality.

Likewise, the Commission's decision not to order implementation of an ORP arrangement in PTC III did not constitute a substantial difference in the facts relevant to the issue of revenue neutrality upon elimination of the PTC Plan. While the trial court did recognize in PTC II that an ORP arrangement may result in increased expenses to the Telephone Companies in addition to the lost revenues they would experience upon elimination of the PTC Plan, the fact that the companies may incur the additional expenses was not determinative in its decision that the Commission must provide revenue neutrality upon elimination of the PTC Plan. The evidence in both cases revealed that other interexchange carriers were willing to enter the intraLATA toll market and that the Telephone Companies would not, in fact, be required to provide toll services in their exchanges and, thus, the Telephone Companies would not incur additional expenses related to an ORP arrangement. Nothing in the trial court's judgment in PTC II indicated that the court refuted this fact. The trial court held that the Commission may not generally direct a change in a utility's revenue and expense structure without a proper proceeding challenging them as unlawful or unreasonable and that an invitation to a utility that experiences a substantial revenue reduction to file a rate case was an unlawful shifting of the burden of proof to the Telephone Companies. Specifically, it found that the elimination of the PTC Plan alone would adversely affect the revenues of the Telephone Companies, which were *prima*

*facie* lawful and reasonable until found otherwise, and that the Commission did not find any of the Telephone Companies' revenues to be unlawful or unreasonable. The court indicated that the Commission was, therefore, required to provide the Telephone Companies with revenue neutrality upon elimination of the PTC Plan and that its proposed revenue neutrality mechanism was unlawful. That the Commission did not order implementation of an ORP arrangement in PTC III did not, therefore, constitute a substantial difference in the facts relevant to the issue of revenue neutrality upon elimination of the PTC Plan.

■ The facts in PTC III were not substantially different from those facts vital to the trial court's decision in PTC II. The doctrine of law of the case, therefore, applied to preclude the Commission from relitigating in PTC III the issue of revenue neutrality upon elimination of the PTC Plan. In its Reports and Orders in PTC III, the Commission found that although it did not necessarily agree that the Telephone Companies had a right to revenue neutrality in the case, it would allow the companies to achieve revenue neutrality at the time each implemented its ILDP plan with interim rates subject to refund coupled with the requirement that the Telephone Companies file subsequent rate cases. The Commission also found that in most circumstances, requiring a utility to file a rate case would be inappropriate but that in this case, with the time strictures placed on it by the FCC, insufficient time remained to examine all relevant factors to determine whether the rate increase was warranted before implementing intra-LATA dialing parity and eliminating the PTC Plan. These findings and conclusions by the Commission were in direct contradiction to the trial court's decisive ruling in PTC II that the Telephone Companies

were entitled to revenue neutrality upon termination of the PTC Plan and that the Commission's proposed mechanism, that the Telephone Companies file rate cases in the future if they are adversely affected by the elimination of the PTC Plan, did not lawfully provide revenue neutrality to the Telephone Companies. The Commission's attempt in PTC III to enter an order in conflict with the trial court's judgment in PTC II was unreasonable and unlawful. The judgment of the trial court reversing the June 10, 1999 Reports and Orders of the Commission and remanding the cause to the Commission for the purpose of clarifying the revenue neutrality issue is, therefore, affirmed.

BRECKENRIDGE, P.J., and HOWARD, J., concur.