STATE of Missouri, ex rel., ASSOCIATED NATURAL GAS COMPANY, Respondent,

v.

PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, Appellant.

No. WD 58032.

Missouri Court of Appeals,
Western District.

Nov. 28, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2001.

Application for Transfer Denied
March 20, 2001.

Before EDWIN H. SMITH, Presiding Judge, ULRICH, Judge and ELLIS, Judge.

ELLIS, Judge.

The Public Service Commission of the State of Missouri (the Commission) appeals the order of the Circuit Court of Cole County reversing the Commission's Report and Order which required Associated Natural Gas Company (ANG) to refund $254,476 to its customers.

The case before the Commission[1] arose from the Commission's regulatory process of reconciling "gas costs" and "gas revenues" for individual natural gas companies on an annual basis. Because ANG is a natural gas company subject to this process, it makes routine actual cost adjustment (ACA) filings with the Commission pursuant to the provisions of its Commission-approved tariffs. The ACA filings adjust ANG's recovery of its natural gas costs from its ratepayers to reflect the actual cost ANG incurred for natural gas for the time period in issue, usually a twelve-month period. In this case, ANG's filing involved the twelve-month period ending August 31, 1996.

After receiving ANG's filing for that period, the Commission ordered its Procurement Analysis Department (PAD) to conduct an audit of the ACA period of September 1, 1995, to August 31, 1996. On August 4, 1997, after reviewing ANG's billed revenues and gas costs, PAD submitted its recommendations to the Commission. In one of its recommendations, PAD recommended that ANG's cost figures be reduced by $254,476 to eliminate an alleged double recovery on its 1995–1996 ACA filing for gas that had been held in storage. PAD indicated that ANG would double-recover the costs of that gas as a result of a change in the methodology used in calculating ANG's actual cost adjustment from an "up-front" recovery method to an "as withdrawn/consumed" method. On September 4, 1997, ANG

filed a response to PAD's recommendations. In that response, ANG challenged PAD's proposed reduction.[2]

Direct testimony on behalf of PAD and ANG was filed on November 24, 1997. Rebuttal testimony was filed on behalf of both parties on January 23, 1998. Surrebuttal testimony was filed on March 2, 1998. On April 7, 1998, a hearing was conducted on the matter to allow for cross-examination, and subsequently, the parties submitted briefs to the Commission.

On January 26, 1999, the Commission issued a Report and Order reciting the evidence presented by the parties and then stating:

> ANG through the rebuttal testimony of Mark Kidd argued that what seemed to be a double recovery in fact was not so. ANG contended that it had injected and withdrawn essentially equal values of gas since 1982 when the ACA mechanism first went into effect. Therefore, ANG would have recovered essentially the same amount under the ACA mechanism whether it used the "as injected" or the "as withdrawn" method of accounting for the value of gas in storage. Therefore, there was no double recovery and ANG should be able to recover the value of gas as withdrawn after December 1, 1995 to the extent that the recovered gas was being taken from the balance that existed in 1982, when the ACA mechanism went into effect.

1. Case No. GR–96–227

2. In its recommendations, the Staff explained that ANG changed its recovery methodology on December 1, 1995. Prior to December 1, 1995, ANG included both storage injections and withdrawals as part of the invoiced supplies for the month in which ANG purchased the gas, and, therefore, ANG did not reflect the LNG and NGPL non-S2 storage injections or withdrawals as separate elements of the ACA filing. Beginning December 1, 1995, ANG showed storage injections and withdrawals as separate components in its ACA filing. The Staff determined that this switch in "storage recovery methodology over a one

month period (which ignores the fact that the only storage withdrawals that should be shown in the filing are those associated with gas supplies injected into storage after December 1, 1995) results in ANG receiving a double recovery of all LNG and NGPL non-S2 gas withdrawn from storage." Based upon this determination, the Staff recommended the removal of all of the withdrawals of gas relating to LNG and NGPL non-S2 storage that ANG showed in its 1995–1996 ACA filing. The Staff's recommendation proposed to disallow $254,476, which represents the total value of gas withdrawn from storage from December 1, 1995, through August 31, 1996.

ANG's theory is premised on the existence of a pre-existing balance of gas in storage at the start of the ACA process in 1982. Staff did not attempt to refute ANG's calculations regarding the interaction between the "as injected" and "as withdrawn" methods. Instead, Staff argued that the value of the pre-existing balance of gas in storage had already been recovered by ANG prior to the inception of the ACA process.

As the basis for this theory, Staff cited the operation of tariff sheet 44, which was the PGA mechanism in effect for ANG for the period of June 2, 1978 to July 8, 1982. Staff argued that tariff sheet 44 allowed ANG to recover its storage withdrawal cost in an up-front fashion by charging its Missouri customers an estimated PGA rate which was based on the Company's average cost of gas determined by using the most recent supplier invoices to compute the appropriate adjustments to its rates. Staff pointed out that tariff sheet 44 does not state that ANG was to use the most recent supplier invoices less storage injections. Therefore, ANG would have been allowed to include the value of all gas purchased, whether stored or sold, in its PGA rates.

Staff's position is persuasive. From June 2, 1978 to July 8, 1982, tariff sheet 44 served as ANG's PGA Clause for the SEMO District and it controlled ANG's recovery treatment of storage injection and withdrawal costs during that period. As of July 8, 1982, the date tariff sheet 44 was canceled, ANG had fully recovered its storage costs incurred up to that date. In order to understand the fact of this recovery, it is important to understand that tariff sheet 44 operated in a pre-FERC Order 636 environment in which all components of gas supply and service were provided by the pipeline and appeared on the pipeline invoices.

Before the Federal Energy Regulatory Commission (FERC) issued Order 636, interstate natural gas pipeline companies provided local distribution companies with a bundled gas supply, transportation and storage. FERC Order 636 required interstate natural gas pipelines to unbundle their gas supply service from their transportation and storage services. Prior to FERC Order 636, components of gas supply service included fixed and variable storage charges, fixed and variable transportation charges, and all gas supply costs, irrespective of whether that gas supply flowed directly to the city gate or was injected into storage. Thus, fixed and variable storage charges would have been included on pipeline supplier invoices in the pre-Order 636 environment in which tariff sheet 44 operated. When ANG changed its recovery method for LNG and NGPL non-S2 gas on July 8, 1982, it had already recovered the gas cost associated with those volumes injected into storage prior to that date. To allow it to recover those costs again when the gas was removed from storage after December 1, 1995 would indeed result in double recovery.

The Commission concluded by stating that "Staff's proposal to reduce Associated Natural Gas Company's SEMO District gas costs by $254,476 to eliminate an alleged double recovery is affirmed."

After its application for rehearing was denied by the Commission, ANG filed a Petition for Writ of Review and Motion for Stay in the Circuit Court of Cole County. On November 19, 1999, the Circuit Court issued its Order and Judgment. The Circuit Court found that the Commission's conclusion regarding ANG's recovery of its storage costs was "contrary to both the law and the evidence."[3] The Circuit

3. The Circuit Court stated:
   The Report and Order issued by the Commission in its Case No. GR096–227 is not based on substantial and competent evidence in that there was insufficient evidence in the record to support the Commission's finding that there had been a prior recovery by ANG (or its predecessor in interest) prior to

Court reversed the Commission's Report and Order and remanded the case back to the Commission for further proceedings. The Commission appeals from the Circuit Court's decision.

### Standard of Review

■ Where the circuit court reverses a decision rendered by the Public Service Commission, on appeal to this Court, we review the decision of the Commission, not the judgment of the circuit court. *Deaconess Manor Ass'n v. Public Serv. Comm'n*, 994 S.W.2d 602, 608 (Mo.App. W.D.1999). Furthermore, under Rule 84.05(e), the party aggrieved by the agency decision is required to file the appellant's brief on appeal. *Psychiatric Healthcare Corp. of Mo. v. Department of Social Services*, 996 S.W.2d 733, 735 (Mo.App. W.D.1999). Accordingly, ANG has filed the appellant's brief in this case.

■ "The PSC's order has a presumption of validity, and the burden is on the party attacking it to prove its invalidity." *State ex rel. Midwest Gas Users' Ass'n v. Public Service Commission*, 976 S.W.2d 470, 476 (Mo.App. W.D.1998). We view the evidence in the light most favorable to the Commission's order and afford the Commission the benefit of all reasonable inferences drawn therefrom. *Deaconess Manor Ass'n*, 994 S.W.2d at 608. "The role of this court in reviewing a decision of the PSC is to determine whether the PSC's order is lawful and reasonable." *State ex rel. Associated Natural Gas Co. v. Public Service Comm'n*, 954 S.W.2d 520, 528 (Mo.App. W.D.1997). Accordingly, we apply a two pronged analysis to our review of the Commission's decision.

■ First, we must determine whether the Commission's order is lawful. *State ex rel. Mobile Home Estates, Inc. v. Public Service Comm'n*, 921 S.W.2d 5, 9 (Mo.App. W.D.1996). "An order's lawfulness turns on whether the PSC had the statutory authority to act as it did," and "[w]hen determining whether the PSC's order is lawful, the appellate courts exercise unrestricted, independent judgment and must correct erroneous interpretations of the law." *Id.*

■ Once we have determined that the Commission's order is lawful, we must review the order to determine whether the order was reasonable. *Deaconess Manor Ass'n*, 994 S.W.2d at 611. "The reasonableness of the PSC's order depends on whether it was supported by competent and substantial evidence upon the whole record; whether it was arbitrary, capricious, or unreasonable; or whether the PSC abused its discretion." *State ex rel. Inter-City Beverage Co., Inc. v. Public Serv. Comm'n*, 972 S.W.2d 397, 401 (Mo. App. W.D.1998). "[T]his court will not substitute its judgment for that of the PSC on issues within the realm of the PSC's expertise." *State ex rel. Associated Natural Gas Co.*, 954 S.W.2d at 528.

■ "In rate-making proceedings, a strong presumption exists in favor of the validity of the conclusions of an experienced administrative body after a complete hearing." *State ex rel. GTE North Inc. v. Missouri Public Service Comm'n*, 835 S.W.2d 356, 361 (Mo.App. W.D.1992). "The burden of proof is on the party seeking to set aside the order of the Commission to demonstrate, by clear and convincing evidence, that the challenged order is unlawful or unreasonable." *Id.* "Factual issues decided by the Commission are pre-

July 8, 1982, of certain costs for natural gas in storage, and therefore the Commission's decision was unreasonable and arbitrary. The Report and Order issued by the Commission in its Case No. GR–96–227 is unlawful in that its interpretation of the provisions of Sheet 44, canceled by the Commission in 1982, does not comport with the plain lan-

guage of the tariff sheet and is arbitrary and capricious. The Report and Order issued by the Commission in its Case No. GR–96–227 is therefore reversed and remanded to the Commission for further proceedings in accordance with this opinion.

sumed to be correct and, until the contrary is shown, an appellate court is obligated to sustain the order of the Commission." *Id.*

In its first point, ANG challenges the Commission's interpretation of Tariff Sheet 44, and in its second point, ANG claims that the testimony of PAD's expert witness was not credible. In both of these points, ANG's underlying argument is that the Commission erred in accepting PAD's proposal because there was no competent and substantial evidence to support that finding.

ANG presented testimony that from September 1982 through November 1995, ANG had included the cost of gas injected into storage in its ACA filings, the "upfront" recovery method. Accordingly, ANG acknowledged that it had recovered the gas storage costs incurred during this time period. However, ANG presented evidence and testimony reflecting that it had consistently carried a substantial storage balance since at least 1982 when the ACA mechanism went into effect. This testimony indicated that ANG had $825,859 worth of gas in storage as of September 1, 1982. ANG maintained that it should be able to recover the value of the gas placed in storage prior to 1982 upon changing to the "as withdrawn/consumed" method of recovery. PAD did not challenge ANG's assertion that it had gas in storage as of 1982, but claimed that ANG recovered the costs for that gas in storage at some point between 1962 and 1982.

In their arguments to the Commission, both ANG and the PAD focused on the language of tariff sheet 44 and whether ANG would have recovered the costs associated with gas placed in storage

under that tariff. On appeal, ANG claims that both the Commission and PAD's expert witness misinterpreted Tariff Sheet 44 and that its own expert's testimony established that the cost of gas in storage would not have been recovered under the language of that tariff.

We analyze tariffs as we do statutes, and if a tariff is clear and unambiguous, we cannot give it another meaning. *A.C. Jacobs & Co. v. Union Elec. Co.,* 17 S.W.3d 579, 584 (Mo.App. W.D.2000). " 'In determining whether the language of a tariff is clear and unambiguous, the standard is whether the tariff's terms are plain and clear to one of ordinary intelligence.' " *Id.* (quoting *Allstates Transworld Vanlines, Inc. v. Southwestern Bell Telephone Co.,* 937 S.W.2d 314, 317 (Mo.App.1996)).

The tariff sheet at issue does not specifically refer to gas in storage. The sheet simply states that "the Company will determine its average cost of gas by using the most recent supplier invoices to compute the appropriate adjustment applicable to its rates," and then sets forth a formula for calculating rates.[4] Having reviewed that tariff sheet, we simply cannot tell from its language whether the cost of the gas placed into storage would have been recovered. Accordingly, we cannot find that the Commission's decision was improper based solely upon the language of Tariff Sheet 44. ANG's first point is denied.

Both parties argued to the Commission that their position was supported by the manner in which Tariff Sheet 44 would have been applied, and both parties presented expert testimony to that effect. Notably, the evidence presented by both

---

4. The pertinent language of Sheet 44 states:
   Each month the Company will determine its average cost of gas by using the most recent supplier invoices to compute the appropriate adjustment applicable to its rates as follows:
   The cost of gas purchased in the most recent twelve month period shall be priced on two bases:

   at the wholesale base rate of—
   Demand: $2.0905 per MCF per month;
   Commodity: $.7634 per MCF per month; and
   at the wholesale rates in effect during the most recent purchase month.

PAD and ANG in support of their respective positions regarding recovery, or the lack thereof, is rather weak. Sheet 44 was only in effect from 1978 until 1982. Neither ANG nor PAD presented evidence regarding when the storage balance was established. Neither side presented invoices, filings, or accounting records prior to 1982 establishing whether the costs associated with the gas in storage were recovered or not recovered. Neither the PAD nor ANG produced any evidence regarding the system or tariffs in place from 1960 until 1978.

■ Both PAD and ANG merely relied upon the opinion testimony of their respective experts. PAD presented expert testimony from a certified public accountant who stated his opinion that ANG would have recovered the cost of the gas in storage, and ANG presented expert testimony from another accountant who stated his opinion that ANG would not have recovered the cost of the gas in storage. While this evidence from both sides seems rather thin to support either position, "[t]he opinion of a qualified expert may amount to substantial and competent evidence." *State ex rel. General Tel. Co. of Midwest v. Public Service Commission,* 537 S.W.2d 655, 663 (Mo.App. W.D.1976) (citing 2 Am. Jur.2d, Adm.Law, s 395, p. 201 (1962)). "Where credible testimony is presented to support the Commission's findings, this court has found the Commission's order to be supported by competent and substantial evidence." *Deaconess Manor Ass'n,* 994 S.W.2d at 611.

ANG asserts that the testimony from PAD's expert was not credible and that the opinion of its own expert should have been believed. ANG claims that the fact that the expert changed his opinion during the course of his numerous depositions renders his testimony uncredible.

■ Evaluation of expert testimony is left to the Commission which "may adopt or reject any or all of any witnesses' testimony." *State ex rel. Associated Natural Gas Co. v. Public Service Comm'n,* 706 S.W.2d 870, 880 (Mo.App. W.D.1985). Since the testimony of both experts was properly presented to the Commission, it was up to the Commission to choose between the conflicting evidence presented as to the propriety of including the cost of the storage gas in the new rate calculations. *State ex rel. Midwest Gas Users' Ass'n v. Public Service Com'n of State,* 976 S.W.2d 485, 495 (Mo.App. W.D.1998) (citing *State ex rel. Associated Natural Gas,* 706 S.W.2d at 882). We will not second-guess that determination. *Id.* PAD's expert testified that the costs of the gas in storage would have been recovered prior to 1982 based upon accounting practices and the application of Tariff Sheet 44. The Commission accepted the testimony of a qualified expert, and it was not error to do so. *State ex rel. Associated Natural Gas Co.,* 706 S.W.2d at 882. ANG's second point is denied.

■ In its third point, ANG claims the Commission erred in failing to grant a rehearing and that it was denied procedural due process because the Regulatory Law Judge who presided over the evidentiary hearing left the employ of the Commission prior to the drafting of the Commission's opinion. ANG asserts that the Commission could not make a reasonable credibility determination when none of those involved in the decision heard all of the testimony live. ANG claims that "fundamental due process requires that the evidence be heard by someone who can judge the credibility of the witness in person and then participate in the decision-making."

■ Section 386.240 permits the Commission to authorize persons employed by it "to do or perform any act, matter or thing which the commission is authorized ... to do or perform; provided, that no order, rule or regulation of any person employed by the commission shall be binding ... unless expressly authorized or approved by the commission." § 386.240, RSMo 1994. Thus, the Commission may authorize a regulatory law

judge to hear evidence and compile a record, but it is the express authorization and approval of the Commission that makes any order, rule or regulation binding. The fact that the Commission may not have heard the live testimony, or that a different regulatory law judge heard the live testimony and another aided the Commission in drafting its decision, in no way implicates any denial of procedural due process. *See, e.g., Davis v. Research Medical Center,* 903 S.W.2d 557 (Mo.App. W.D. en banc 1995).

> Our appellate courts ... have held that a commissioner who decides the case after reading the full record but without hearing the evidence does not violate due process. *See, Bean v. Missouri Comm'n on Human Rights,* 913 S.W.2d 419, 423 (Mo.App.1996) (agency members may determine the witness's credibility despite not being present to hear and observe testimony); *Ferrario v. Baer,* 745 S.W.2d 193, 198 (Mo.App. 1987) (it is not uncommon for the decisionmaker to be a different person or entity than the one who heard the evidence and compiled the record); *Phil Crowley Steel Corp. v. King,* 778 S.W.2d 800, 804 (Mo.App.1989) (no Missouri court has found changes in personnel violate due process).

*Kraus v. Director of Revenue,* 935 S.W.2d 71, 73 (Mo.App. W.D.1996).

Accordingly, ANG was not denied due process by the fact that the members of the Commission did not actually "hear" the evidence. Likewise, ANG was not denied due process of law simply because the regulatory law judge who heard the evidence left the employ of the Commission prior to the drafting of the Commission's opinion. Point denied.

■ In its fourth point, ANG claims that the Commission's findings were legally insufficient because those findings did not sufficiently explain how it reached its decision to reduce ANG's gas costs by $254,476. ANG asserts that the Commission's findings are nothing more that conclusory opinions and references to the position taken by PAD and that those findings are not sufficiently definite to allow for appellate review.

■ "[I]t 'is not required for the validity of administrative findings that they [the PSC] go into evidentiary detail.'" *State ex rel. Midwest Gas Users' Ass'n,* 976 S.W.2d at 496 (quoting *Citizens State Bank v. State Banking Board,* 602 S.W.2d 895, 899 (Mo.App.1980)). "[T]he key issue is whether we can determine the facts on which the order was based from the Report and Order," and "[a]s is evident from our discussion in the preceding sections, the Report and Order was fully adequate to permit this review." *Id.* Point denied.

In its fifth and final point, ANG argues that the Commission erred as a matter of law because it considered FERC Order 636 in rendering its decision. ANG claims that Order 636 had no bearing on the issues before the Commission and that the Commission failed to demonstrate how that order would have affected recovery of storage costs.

ANG does not appear to dispute the Commission's comments explaining the import of FERC Order 636, and instead, ANG asserts that the Commission made an unexplained leap in logic. ANG claims that the testimony of its expert reflects that FERC Order 636 would not have had any effect on Tariff Sheet 44.

In making its findings, the Commission clearly rejected the testimony of ANG's expert and adopted the testimony of PAD's expert. As noted, *supra,* the evaluation of expert testimony is left to the Commission which "may adopt or reject any or all of any witnesses' testimony." *State ex rel. Associated Natural Gas Co.,* 706 S.W.2d at 880. Point denied.

The Report and Order of the Public Service Commission is affirmed.

All concur.