STATE of Missouri ex rel LaCLEDE GAS COMPANY, Respondent,

v.

PUBLIC SERVICE COMMISSION OF the STATE of Missouri, Appellant.

No. WD 74852.

Missouri Court of Appeals, Western District.

Dec. 11, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2013.

Application for Transfer Denied March 19, 2013.

Shelley Brueggemann, Jefferson City, MO, for Appellant.

Michael Pendergast, Rick Zucker, St. Louis, MO, Diana Carter, Brian McCartney, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, C.J., MARK D. PFEIFFER, J., and CHRISTINE CARPENTER, Sp. J.

JAMES EDWARD WELSH, Chief Judge.

This appeal involves a dispute over whether the Public Service Commission unlawfully and unreasonably issued two orders against Laclede Gas Company—one being a summary determination finding that Laclede violated a Stipulation and Agreement approved by the Commission in 2001 (the 2001 Agreement) by refusing to provide certain documents requested by the Commission's Staff and the other being a dismissal of Laclede's counterclaim against the Commission's Staff. Laclede filed a petition for writ of review of the

Commission's orders with the circuit court, and the circuit court reversed the Commission's orders and set them aside as unlawful. The Commission, thereafter, filed this appeal. We review the decision of the Commission rather than the decision of the circuit court. *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 210 S.W.3d 330, 334 (Mo.App.2006). Rule 84.05(e) requires that the party aggrieved by the agency decision file the appellant's brief and that the party aggrieved by the circuit court's decision file the respondent's brief. Thus, Laclede filed the appellant's brief in this case, and the Commission filed the respondent's brief.

In this appeal, Laclede contends the Commission erred in issuing a summary determination because: (1) the Commission's order was unlawful in that genuine issues of material fact were in dispute, (2) the Commission's order was unlawful in that the Commission ruled against Laclede without affording Laclede a hearing as required by law, (3) the Commission's order was not supported by competent and substantial evidence and was arbitrary, capricious, and unreasonable in that the evidence did not support the Commission's findings regarding the 2001 Agreement and whether Laclede objected to the discovery request, (4) the Commission's order was arbitrary, capricious, and unreasonable and was an abuse of discretion in that the Commission found that Laclede violated the 2001 Agreement even though the Commission repeatedly stated that the Staff's discovery request was governed by the Rules of Civil Procedure and not by the 2001 Agreement, and (5) the Commission's order was unlawful in that the Commission violated the law of the case by requiring Laclede to produce information under terms that directly conflicted with a previous judgment from the circuit court. Finally, Laclede asserts the Commission's order dismissing Laclede's counterclaim for failing to state a claim upon which relief could be granted was unlawful in that Laclede pled facts that stated a claim for relief under Regulation 4 CSR 240–2.080(6). We find the Commission's orders to be lawful and reasonable and affirm the orders of the Commission.

## FACTS

On December 1, 2000, Laclede applied to the Commission for approval to restructure itself as a holding company with subsidiaries (Case No. GM–2001–342). The case was resolved through a stipulation and agreement, which the Commission approved by an order dated August 14, 2001 (2001 Agreement). The Commission issued its order authorizing Laclede's reorganization into a holding company, a regulated utility company, and unregulated subsidiaries "subject to the conditions contained in the Unanimous Stipulation and Agreement[.]" The 2001 Agreement required Laclede to account for transactions it entered into with its affiliated companies in accordance with the provisions of a Cost Allocation Manual (CAM). Accordingly, Section VI.1 of the 2001 Agreement stated:

> Upon implementation of the Proposed Restructuring, transactions involving transfers of goods or services between Laclede Gas Company and one or more of the Company's affiliated entities shall be conducted and accounted for in compliance with the provisions of a Cost Allocation Manual ("CAM").

Section IV of the 2001 Agreement prescribed the obligations of Laclede and its affiliates to provide the Commission's Staff and others access to information. Section IV.2 said:

> Upon request, Laclede Gas Company and The Laclede Group, Inc. agree to make available to Staff . . . upon written notice during normal working hours and

subject to appropriate confidentiality and discovery procedures, all books, records and employees of The Laclede Group, Inc., Laclede Gas Company and its affiliates as may be reasonably required to verify compliance with the CAM and the conditions set forth in this Stipulation and Agreement.... Laclede Gas Company and The Laclede Group, Inc. shall also provide Staff and Public Counsel any other such information (including access to employees) relevant to the Commission's ratemaking, financing, safety, quality of service and other regulatory authority over Laclede Gas Company; provided that Laclede Gas Company and any affiliate or subsidiary of The Laclede Group, Inc. shall have the right to object to such production of records or personnel on any basis under applicable law and Commission rules, excluding any objection that such records and personnel of affiliates or subsidiaries: (a) are not within the possession or control of Laclede Gas Company; or (b) are either not relevant or are not subject to the Commission's jurisdiction and statutory authority by virtue of or as a result of the implementation of the Proposed Restructuring.

As part of its regulatory duty, the Commission examines a gas corporation's actual costs for procuring gas supplies. For the 2004–2005 and 2005–2006 periods, Laclede had two actual cost adjustments (ACA) cases pending before the Commission. A discovery dispute arose between the Staff and Laclede regarding information relating to Laclede's purchase of gas supplies from its affiliate, Laclede Energy Resources, Inc. (LER).[1] The Staff sent a discovery request to Laclede essentially seeking information on LER's cost to procure gas.

Laclede objected to the Staff's discovery request arguing that, pursuant to the 2001 Agreement, Laclede was obligated to provide the Staff only such information as was necessary for the Staff to verify Laclede's compliance with the CAM and that the information the Staff sought was not reasonably calculated to lead to the discovery of admissible evidence. The Staff replied that its discovery request was not being made pursuant to the CAM or the Commission's affiliate transaction rules. Rather, the Staff said that its request was made to determine whether Laclede paid too much for the gas it bought from LER.

The Commission supported the Staff's view that the discovery requests were not made pursuant to the 2001 Agreement, the CAM, or the Commission's affiliate transaction rules. The Commission granted the Staff's motion to compel and ordered Laclede to produce the information in accordance with the rules of discovery. On January 21, 2009, the Commission clarified its order compelling Laclede to produce documents by stating:

> The Commission has ordered Laclede to produce information about its affiliate according to the rules of discovery [and] not under the Commission's Affiliate Transaction Rule. Although it is true that by granting Staff's motion, Staff is permitted to investigate Laclede's affiliate transactions, such investigation is limited to information that may lead to evidence that is relevant to these [actual cost adjustment (ACA)] cases. To the extent that Laclede is in possession of the information, the Commission clarifies its order compelling Laclede to produce the information requested by Staff.

Laclede responded to this order by stating that it did not have possession of the LER data sought by the Staff.

---

1. LER is not regulated by the Commission.

The Staff and Public Counsel later asserted that the 2001 Agreement required Laclede to produce the information. In response, the Commission issued an order on November 4, 2009, rejecting those arguments and again emphasizing that it was permitting the discovery request pursuant to the Rules of Civil Procedure and not pursuant to the affiliate transaction rules or the 2001 Agreement. The Commission stated:

Additionally, Staff and Public Counsel have asserted that Laclede is bound under an agreement reached in Case No. GM–2001–342 to provide the information Staff seeks.

The Commission emphasizes that Staff's discovery request is not an investigation under the Commission's Affiliate Transaction rule nor is it a complaint through which Staff or Public Counsel seeks enforcement of the agreement reached in Case No. GM–2001–342. These issues have but served as red herrings in what is a discovery request governed by the rules of civil procedure.

When Laclede did not comply with the discovery request to the Staff's satisfaction, the Commission directed its General Counsel to seek enforcement of the November 4, 2009 order in the circuit court. The Commission's General Counsel filed a petition for a writ of mandamus in the Cole County Circuit Court seeking to compel Laclede to comply with the November 4, 2009 order. On May 11, 2010, the circuit court held oral argument on pending motions in the mandamus action. At the oral argument, Laclede's counsel argued that Laclede had complied with the November 4, 2009 order and had answered, consistent with the Rules of Civil Procedure, that certain LER documents were not in its possession, custody, or control. On June 25, 2010, the circuit court issued its Judgment and Writ of Mandamus, in which the court required Laclede to file a return to writ stating, among other things, "that [Laclede] has produced all of the information sought by the PSC Discovery Order that is within its possession, custody or control." Thereafter, Laclede complied with the circuit court's order by filing the required return.

The complaint under appeal in this case was filed on July 7, 2010, and became Case No. GC–2011–0006. The complaint sought a finding that Laclede had violated Section IV.2 of the 2001 Agreement by representing that it did not have possession of LER's business information. Laclede filed a counterclaim against the Commission's Staff, alleging that the Staff had violated the CAM and the Commission's affiliate transaction rules by virtue of the positions it had taken in the various cases. Specifically, Laclede alleged that the Staff had violated the affiliate transaction rules and the CAM by asserting disallowances against Laclede based on a pricing standard that was contrary to the pricing standards in the Commission's affiliate transaction rules and the CAM. In the counterclaim, Laclede also alleged that:

Staff's position on affiliate pricing is not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. By presenting and maintaining claims against Laclede based on this unlawful position, Staff has made misrepresentations to the Commission, violated Commission Rules, and violated the Stipulation and Agreement approved by the Commission in Case No. GM–2001–342, pursuant to which the CAM was created.

After the Staff and the Office of the Public Counsel filed motions to dismiss Laclede's counterclaim, the Commission dismissed Laclede's counterclaim. The Commission concluded that Laclede failed

to state a claim for relief because neither the affiliate transaction rules nor the CAM imposed any obligation on the Staff, so the Commission did not find the Staff in violation of either. The Commission also found that the fundamental problem with the counterclaim was that Laclede was asking for a decision that must be made in the ACA cases and not the complaint case. The Commission explained:

> Laclede is really asking the Commission to issue an advisory opinion telling Staff that the position it has taken in the ACA cases is incorrect. The Commission may ultimately agree with Laclede that the position Staff has asserted is inconsistent with the affiliate transaction rules and Laclede's [CAM], but the proper forum for resolving that question is in those ACA cases, rather than as a counterclaim in Staff's complaint.

Laclede filed its application for rehearing of the order dismissing the counterclaim, which the Commission denied.

Further, the Staff and Laclede filed motions for summary determination, both asserting that the material facts in the case were undisputed. The Commission granted summary determination in favor of the Staff on its complaint. In the order, the Commission conceded that, if the first portion of Section IV.2 were the entire agreement, Laclede would be entitled to prevail on its motion for summary determination. The Commission so concluded because:

> By its clear terms, that portion of the stipulation and agreement requires Laclede and its affiliates to turn over documents that are connected to an investigation into compliance with the Cost

Allocation Manual and the conditions set forth in the stipulation and agreement. Staff has repeatedly indicated that it is not seeking documents from Laclede as part of an effort to verify compliance with the Cost Allocation Manual, the stipulation and agreement, or the affiliate transaction rules.[2]

The Commission found, however, that Laclede's obligation to produce LER information was covered by the latter portion of Section IV.2, which pertains to other information "relevant to the Commission's rate-making, financing, safety, quality of service, and other regulatory authority over Laclede Gas Company." The Commission concluded that this latter portion of Section IV.2 was not limited to situations in which the Staff was seeking to verify compliance with the CAM or the terms of the stipulation and agreement but instead applied to general discovery requests.

According to the Commission, the latter portion of Section IV.2 allowed Laclede the right to object to the production of information on any lawful basis with two exceptions: Laclede and its affiliated companies were not allowed to object (1) that the information is "not within the possession or control of Laclede Gas Company" or (2) that the information is no longer relevant or subject to the Commission's jurisdiction and statutory authority because of restructuring. The Commission further noted that, when it stated in one of its previous orders issued on January 21, 2009, that "to the extent that Laclede is in possession of the information, the Commission clarifies its order compelling Laclede to produce the information requested by Staff," the Commission did not intend to relieve Lac-

---

2. Indeed, the Commission emphasized: "[T]his order ... is not about the interpretation of the Cost Allocation Manual or the affiliate transaction rules. Laclede would like to argue ... that the information Staff seeks is not relevant, but that question is not cur-
rently before the Commission. Ultimately, the questions about the applicability and interpretation of the Cost Allocation Manual and the affiliate transaction rules will be resolved in the underlying ACA cases, but not in this complaint."

lede of its obligation to produce documents by including that sentence in the body of its order. The Commission concluded that when Laclede argued that it did not have possession of documents belonging to its affiliate, LER, Laclede violated the explicit terms of the 2001 Agreement and was subject to a penalty for its violation of the 2001 Agreement. Laclede filed its application for rehearing before the Commission, which the Commission denied.

Thereafter, Laclede filed with the circuit court a petition for writ of review of the Commission's orders that granted the Staff's request for a summary determination and that dismissed Laclede's counterclaim against the Commission's Staff. The circuit court reversed the Commission's orders and set them aside as unlawful. The circuit court determined that a genuine issue of material fact remained as to whether this matter involved a CAM issue or some other regulatory issue. The circuit court also noted that because Laclede denied that it had objected to the Staff's discovery request on the grounds that it did not have possession, custody, or control of its affiliate's data, it was improper as a matter of law for the Commission to find on summary determination that Laclede violated Section IV.2 of the 2001 Agreement without establishing this fact. Further, the circuit court found that the Commission's summary determination order was unreasonable and arbitrary and capricious, because the Commission repeatedly disclaimed the applicability of the 2001 Agreement to the discovery request and then later concluded that Laclede violated the 2001 Agreement in its response to the discovery request. The circuit court also found that the Commission's order dismissing Laclede's counterclaim was unlawful. The court determined that Laclede met the pleading requirements and stated a claim upon which relief may be granted. The circuit court noted that the Commission's Staff is required to take positions before the Commission that are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law and that Laclede's counterclaim stated facts that allege that the Staff had taken a position that cannot be reconciled with existing law or a change to that law. The circuit court, therefore, reversed and remanded the Commission's orders granting the Staff's request for a summary determination and dismissing Laclede's counterclaim against the Commission's Staff.

Thereafter, the Commission filed this appeal. However, as we previously noted, because we review the decision of the Commission rather than the decision of the circuit court, Rule 84.05(e) requires that the party aggrieved by the agency decision file the appellant's brief and that the party aggrieved by the circuit court's decision file the respondent's brief. Thus, Laclede filed the appellant's brief since it was aggrieved by the agency's decision, despite having prevailed at the circuit court level.

### Analysis

"The [Commission's] order has a presumption of validity, and the burden is on the party attacking it to prove its invalidity.'" *State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n of State of Mo.*, 37 S.W.3d 287, 292 (Mo.App.2000) (citation omitted). "The role of this court in reviewing a decision of the [Commission] is to determine whether the [Commission's] order is lawful and reasonable." *State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n*, 954 S.W.2d 520, 528 (Mo.App.1997). An order is lawful if the Commission had the statutory authority to act as it did. *State ex rel. Associated Natural Gas*, 37 S.W.3d at 292. In determining the lawfulness of the order, this

court exercises unrestricted independent judgment and must correct erroneous interpretations of the law. *Id.* A reasonable order is an order that is not arbitrary or capricious and is not an abuse of the Commission's discretion. *Id.* A Commission order is reasonable if it is supported by substantial and competent evidence on the whole record. *Id.* This court will not substitute its judgment for that of the Commission on matters that are within the realm of the Commission's expertise. *Id.*

■ In its first point,[3] Laclede asserts that the Commission's order issuing a summary determination in favor of the Staff was unlawful because genuine issues of material fact remained in dispute.[4] In particular, Laclede asserts that a genuine issue of material fact remained as to whether this case involved a CAM matter or a ratemaking, financing, safety, quality of service, or other regulatory matter. The classification of the matter may be important because, if the matter is a CAM matter, then Laclede concedes that it has agreed to produce its affiliate's information that is reasonably required to verify compliance with the CAM, but, if the matter is a ratemaking, financing, safety, quality of service, or other type of matter, Laclede may object to producing records on any basis under applicable law, excluding objections that affiliate records are not within its possession or control.

Regulation 4 CSR 240–2.117(1)(E) provides:

> The commission may grant the motion for summary determination if the pleadings, testimony, discovery, affidavits, and memoranda on file show that there is no genuine issue as to any material fact, that any party is entitled to relief as a matter of law as to all or any part of the case, and the commission determines that it is in the public interest. An order granting summary determination shall include findings of fact and conclusions of law.

■ Summary determination was proper in this case because the pleadings and exhibits before the Commission showed that there were no genuine issues of material fact in dispute. 4 CSR 240–2.117(1)(E). No dispute existed that the information requested by Staff from Laclede was considered discovery in the context of Laclede's actual cost adjustments (ACA) cases for 2005 and 2006. The ACA process is part of the Commission's ratemaking and regulatory function. *State ex rel. Associated Natural Gas*, 954 S.W.2d at 523.[5]

---

3. Laclede's first point relied on fails to comply with Rule 84.04 in that it does not explain why, in the context of the case, the legal reasons support the claim of reversible error as required by Rule 84.04(d)(2)(C). Although we could choose to not address Laclede's first point on appeal on the basis of Laclede's failure to comply with Rule 84.04's briefing requirements, we prefer to dispose of a case on the merits, whenever possible. *Lueker v. Mo. W. State Univ.*, 241 S.W.3d 865, 867 (Mo.App.2008). Because Laclede's argument sets forth why the legal reasons support the claim of reversible error, we *ex gratia* consider its first point on appeal.

4. It is worth noting that apparently Laclede believed that genuine issues of material fact

were not in dispute because it also filed a request for summary determination with the Commission.

5. As explained by the court in *State ex rel. Associated Natural Gas*, a gas utility can also recover from its customers the costs which it incurs in obtaining gas from its own suppliers. 954 S.W.2d at 523. These costs are recovered through a two-part mechanism known as a purchased gas adjustment/actual cost adjustment (PGA/ACA) process. *Id.* A gas utility files annual tariffs estimating its cost of obtaining gas over the coming year, which are then included in the customers' bills over the ensuing twelve months. *Id.* Then, ACA filings are submitted by the gas utility, "to correct any discrepancies between

Laclede acknowledges that the discovery request was made in the ACA cases but argues that it is a fact issue as to which kind of case covers the affiliate transaction disallowance in the ACA cases. The underlying complaint filed by the Staff in this case alleged that, in the ACA cases, Laclede violated the 2001 Agreement by refusing to provide documents of its affiliate, LER. To be allowed to restructure Laclede's holdings, the 2001 Agreement required Laclede to abide by the conditions of the Unanimous Stipulation. The explicit language of the Unanimous Stipulation prohibited Laclede from objecting to produce records of affiliates by maintaining that those records are not within the possession or control of Laclede. Because a portion of the business Laclede conducts was transformed into unregulated activity that might evade the Commission's review,[6] Section IV.2 allowed the Staff and the Public Counsel to have the same access to business records related to Laclede's activities as they would have had before the restructuring. This was the bargain Laclede struck to be able to restructure, which the Commission then approved and became a term of the 2001 Agreement.

■■■■■ The Commission determined that, under Section IV.2 of the 2001 Agreement, Laclede agreed that it would provide the Staff any other information that was "relevant to the Commission's ratemaking,

financing, safety, quality of service and other regulatory over Laclede Gas Company." This section was not limited to a situation in which the Staff was seeking to verify compliance with the CAM or the terms of the 2001 Agreement. This section applied to general discovery requests. The Commission determined that Section IV.2 of the Unanimous Stipulation required Laclede to produce the requested documents and that Laclede's failure to do so violated the 2001 Agreement approved by the Commission. We agree. "The Commission is entitled to interpret its own orders and to ascribe to them a proper meaning[.]" *State ex rel. Beaufort Transfer Co.. v. Pub. Serv. Comm'n of Mo.*, 610 S.W.2d 96, 100 (Mo.App.1980). Because the information requested by the Staff was requested in the context of reviews of Laclede's actual cost adjustments, the plain language of Section IV.2 required production of the requested documents. The Commission's summary determination in this matter, therefore, was lawful and reasonable.

Laclede also asserts that there was a genuine issue of material fact whether it had actually objected to providing LER information on the grounds that the information was not in its possession or control. Laclede asserts that such objection was a necessary element to finding that it had violated Section IV.2 of the 2001 agree-

the PGA amounts which were prospectively billed to [the gas utility's] customers and the costs which, in retrospect, [the gas utility] actually incurred in obtaining gas from its suppliers." *Id.* Ultimately, this ACA process also provides the Commission the "opportunity to review the reasonableness of [the utility's] cost-recouping charges by evaluating [the utility's] gas acquisition practices during the relevant time period. If the costs have been appropriately incurred, the PSC allows [the utility] to pass them on to the customers. In order to determine if the costs can be passed through to customers as reasonable charges, the PSC employs a "prudence" standard[.]"

*Id.* The PSC can disapprove actual cost adjustments on the basis that the costs are imprudent. *State ex rel. Midwest Gas Users' Ass'n v. Pub. Serv. Comm'n of Mo.*, 976 S.W.2d 470, 483 (Mo.App.1998).

6. In this case, we are not asked to decide whether the parties' Stipulation and Agreement approving Laclede's restructuring itself as a holding company with subsidiaries could affect the Commission's obligation to provide oversight of ratemaking as set forth in Missouri statutes.

ment. We find Laclede's argument disingenuous.

Laclede's motion for summary determination specifically identified the starting basis for why it objected to Staff's discovery requests in the ACA cases. In its statement of "Material Facts with No Genuine Issue," Laclede stated that it "objected to the data requests on the grounds that such requests did not comply with the information provisions set forth in the Rules and the 2001 [Agreement], and were therefore not reasonably calculated to lead to the discovery of admissible evidence." Laclede further noted, however, that in response to a Commission order in the ACA cases, issued on January 21, 2009, "directing Laclede to produce the information requested by Staff 'to the extent that Laclede is in possession of the information,'" Laclede responded to Staff "that it was not in possession of the LER documents requested by Staff." Laclede then "objected" to Staff's renewed data requests by "again assert[ing] that the data requests did not comply with the Rules and the CAM as required in the 2001 [Agreement]." Thereafter, in the Cole County Circuit Court Mandamus Action, Laclede explained to the court that it refused to produce LER's information to Staff in the ACA cases because it was not in its possession, custody, or control. Given these objections, no genuine issue of material fact remained as to whether Laclede objected to providing the Staff with the LER information on the grounds that the information was not in Laclede's possession or control, and, therefore, the Commission's summary determination was lawful and reasonable.[7]

In its second point, Laclede argues that the Commission's order was unlawful in that the Commission ruled against Laclede without affording Laclede a hearing as required by law. We disagree.

■ As previously noted, Regulation 4 CSR 240–2.117(1)(E) allows the Commission to grant a motion for summary determination "if the pleadings, testimony, discovery, affidavits, and memoranda on file show that there is no genuine issue as to any material fact, that any party is entitled to relief as a matter of law as to all or any part of the case, and the commission determines that it is in the public interest." The regulation does not require a hearing. Indeed, subsection (1)(F) of that regulation instructs the Commission to hold an evidentiary hearing "[i]f the commission grants a motion for summary determination, but does not dispose thereby of the entire case." Moreover, subsection (1)(G) does not even require the Commission to hold an oral argument on the motion for summary determination. Subsection (1)(G) merely says the Commission "*may* hear oral arguments on a motion for summary determination."[8]

■ In this case, the parties filed dueling motions for summary determination. Laclede unequivocally stated in it motion for summary determination that "the salient facts in this case are undisputed," and it stated in its response in opposition to the Staff's motion for summary determination that "[t]he material facts in this case are undisputed." By filing its request for summary determination pursuant to Regulation 4 CSR 240–2.117, Laclede acknowl-

---

7. Rule 58.01(c)(2) provides for two forms of responses to a discovery request: "state that the requested items will be produced" or object stating "each reason for objection … in detail." Laclede obviously did not respond by stating that the requested items would be produced. Thus, the only other response that Laclede could give is to object to the production of the items.

8. We added the emphasis.

edged that it was waiving its right to an evidentiary hearing if the Commission issued a decision resolving the entire case. Laclede, therefore, acknowledged that the case involved purely a matter of law which was appropriate for resolution by summary determination. Moreover, the record establishes that Laclede never asked for a hearing; Laclede merely asked the Commission to deny the Staff's motion for summary determination and to grant Laclede's motion for summary determination. *See State ex rel. Ozark Border Elec. Co-op. v. Pub. Serv. Comm'n of Mo.*, 924 S.W.2d 597, 601 (Mo.App.1996) (PSC "hearing is sufficient if parties are offered the opportunity to intervene and request a hearing but no party requests to present evidence"). The Commission, therefore, was not required to hold a hearing, and its summary determination in this matter was lawful and reasonable.

█ In its third point, Laclede asserts the Commission's order was not supported by competent and substantial evidence and was arbitrary, capricious, and unreasonable in that the evidence did not support the Commission's findings regarding the 2001 Agreement and whether Laclede objected to the discovery request. In this point, Laclede is merely recasting its first point. In this point, Laclede argues that no competent and substantial evidence established that this case was not a CAM matter or that Laclede objected to the discovery request. As we have previously noted, the information requested by the Staff from Laclede was a discovery request made in the context of Laclede's actual cost adjustments cases (ACA) for 2005 and 2006. Moreover, the evidence established that Laclede had objected to the Staff's discovery request on the grounds that the information was not in Laclede's possession or control. Thus, the Commission's order granting summary de-

termination in favor of the Staff was supported by competent and substantial evidence and was not arbitrary, capricious, and unreasonable.

In its fourth point, Laclede argues that the Commission's order was arbitrary, capricious, and unreasonable and was an abuse of discretion because the Commission found that Laclede violated the 2001 Agreement even though the Commission previously stated that the Staff's discovery request was governed by the Rules of Civil Procedure and not by the 2001 Agreement. In support of its argument, Laclede points to the fact that the Commission (1) issued its January 21, 2009 order specifically requiring Laclede to turn over documents in its possession, (2) insisted in its November 4, 2009 order that the Rules of Civil Procedure applied to the document request, (3) determined in its November 4, 2009 order that the 2001 Agreement did not apply to the discovery request, and (4) obtained a writ from the Cole County Circuit Court requiring Laclede to produce only those documents in its possession, custody, or control.

█ "The Commission is entitled to interpret its own orders and to ascribe to them a proper meaning[.]" *State ex rel. Beaufort*, 610 S.W.2d at 100. Even considering the previous discovery orders, the Commission determined that Laclede violated the 2001 Agreement by violating the Unanimous Stipulation. The Commission "is not bound by *stare decisis* based on prior administrative decisions." *State ex rel. Aquila, Inc. v. Pub. Serv. Comm'n of Mo.*, 326 S.W.3d 20, 32 (Mo.App.2010); *State ex rel. GTE North, Inc. v. Mo. Pub. Serv. Comm'n*, 835 S.W.2d 356, 371 (Mo. App.1992). "The mere fact that an administrative agency departs from a policy expressed in prior cases which it has decided is no ground alone for a reviewing court to reverse the decision.'" *State ex rel.*

*Churchill Truck Lines, Inc. v. Pub. Serv. Comm'n of Mo.,* 734 S.W.2d 586, 593 (Mo. App.1987) (citation omitted). " 'Courts are not concerned with alleged inconsistency between current and prior decisions of an administrative agency so long as the action taken is not otherwise arbitrary or unreasonable,' " *State ex rel. GTE North, Inc.,* 835 S.W.2d at 371 (citation omitted), or "so long as [the] current decision is not otherwise unreasonable or unlawful[.]" *State ex rel. Aquila,* 326 S.W.3d at 32.

██ Thus, just because the Commission previously stated that the Staff's discovery request was governed by the Rules of Civil Procedure and not by the 2001 Agreement but then decided that Laclede violated the 2001 Agreement does not render the Commission's decision arbitrary or unreasonable. The Commission's order granting summary determination in favor of the Staff, therefore, was not arbitrary, capricious, or unreasonable.

██ In its fifth point, Laclede asserts that the Commission's order was unlawful because the Commission violated "the law of the case" by requiring Laclede to produce information under terms that directly conflicted with a previous judgment from the circuit court. Laclede notes that, in the mandamus action, the circuit court's mandamus judgment instructed Laclede to provide the disputed information only to the extent it was "in the possession, custody or control" of Laclede. Laclede contends that, because the circuit court's judgment was never appealed by the Commission, it became the "law of the case." *See e.g. State ex rel. Alma Tel. Co. v. Pub. Serv. Comm'n,* 40 S.W.3d 381, 388 (Mo. App.2001).

██ " 'Where a decision by an intermediate court is appealable to a higher court but such appeal is not pursued, the decision of the intermediate court is the law of the case in all subsequent proceedings, and it has even been held that the decision of a trial court is not subject to review before another judge of the same court when the point ruled on is presented in a subsequent stage of the same case.' " *State ex rel. Anderson Motor Serv. Co. v. Pub. Serv. Comm'n,* 234 Mo.App. 470, 134 S.W.2d 1069, 1075 (1939), *as affirmed by State ex rel. Anderson Motor Serv. Co. v. Pub. Serv. Comm'n,* 348 Mo. 613, 154 S.W.2d 777 (1941) (citation omitted). Indeed, in *State ex rel. Anderson,* the court found that a circuit court's decree "whether correct or erroneous, became the law of the case and that the Commission could not, in any subsequent hearing, deny the application of [appellant] if the facts remained substantially the same as those appearing in the hearing had before the Commission on which its various reports and orders were based." 134 S.W.2d at 1075. Where, however, "the issues or evidence ... are substantially different from those vital to the first adjudication and judgment, the [doctrine of the law of the case] may not apply." *State ex rel. Alma Tel. Co.,* 40 S.W.3d at 388. " 'The true test of the conclusiveness of a former judgment in respect to particular matters is identity of issues.' " *State ex rel. Anderson,* 134 S.W.2d at 1075 (citation omitted). As the *Anderson* court explained:

> "If a particular point or question is in issue in the second action, and the judgment will depend upon the determination of a particular point or question, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue and adjudicated in the first suit; otherwise not."

*Id.* (citation omitted).

The circuit court's judgment in the mandamus action never considered the issue of whether or not Laclede's refusal to provide

the discovery information requested by the Staff violated the Commission's 2001 Agreement. Because this issue was never decided by the circuit court, the circuit court's order that Laclede provide the discovery information only to the extent that it was in Laclede's possession, custody, or control is not the law of the case.

In its last point, Laclede contends that the Commission erred in issuing its order dismissing Laclede's counterclaim. Laclede asserts that, because it pled facts that stated a claim for relief under Regulation 4 CSR 240–2.080(6), the Commission's order was unlawful.

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." *Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.,* 985 S.W.2d 793, 796 (Mo.App.1998) (citations omitted). For Laclede's counterclaim to withstand a motion to dismiss for failure to state claim, the facts as alleged by Laclede had to "meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.*

■■■■■ In its counterclaim, Laclede asserted that the Staff failed to comply with the Commission's affiliate transaction rules and with the CAM. The Commission dismissed Laclede's counterclaim, in part, because it refused to issue an advisory opinion telling the Staff that the position it took in its ACA review of Laclede's gas costs was incorrect. Like other administrative agencies, the Commission is not authorized to issue advisory opinions. The Commission, the circuit court, and this court should not render advisory opinions. *See Wasinger v. Labor & Indus. Relations*

*Comm'n,* 701 S.W.2d 793, 794 (Mo.App. 1985). "The function of each is to resolve disputes properly presented by real parties in interest with existing adversary positions." *Id.* The Commission was restricted to determining the complaint before it, and it should not be issuing decisions with "no practical effect and that are only advisory as to future, hypothetical situations." *State ex rel. Mo. Parks Assoc. v. Mo. Dept. of Natural Res.,* 316 S.W.3d 375, 384 (Mo. App.2010). "The petition must present a 'real, substantial, presently existing controversy admitting of specific relief as distinguished from an advisory or hypothetical situation.'" *Akin v. Dir. of Revenue,* 934 S.W.2d 295, 298 (Mo. banc 1996) (citation omitted).

■■■ The issue before the Commission in this case was whether or not Laclede violated the 2001 Agreement by refusing to provide certain documents requested by the Commission's staff. In dismissing Laclede's counterclaim, the Commission stated:

> Through its counterclaim and motion for the Commission to take notice, Laclede is really asking the Commission to issue an advisory opinion telling Staff that the position it has taken in the ACA cases is incorrect. The Commission may ultimately agree with Laclede that the position Staff has asserted is inconsistent with the affiliate transaction rules and Laclede's Cost Allocation Manual, but the proper forum for resolving that question is in those ACA cases, rather than as a counterclaim in Staff's complaint.

We agree. Whether or not the Staff failed to comply with the Commission's affiliate transaction rules and with the CAM should be resolved in the ACA cases [9] and not in

9. Even Laclede acknowledges this in its coun-

terclaim when it states the alleged violations

an action seeking a determination of whether Laclede violated an agreement with the Commission by refusing to respond to discovery requests.[10] Therefore, the Commission's order dismissing Laclede's counterclaim was lawful and reasonable.

### Conclusion

The Commission's order granting the Staff's request for a motion for summary determination and its order dismissing Laclede's counterclaim were lawful and reasonable. We, therefore, reverse the circuit court's judgment and affirm the decision of the Commission.

All concur.

---

of the affiliate transaction rules and the CAM occurred *"in the ACA proceedings."*

10. This is analogous to filing a malicious prosecution claim prior to the final disposition of the underlying prosecution. It may be that an individual has a claim for malicious prosecution, but, until the individual successfully defends the underlying case, any such claim is premature.